173 So.2d 550 (1965)
Mrs. Mary Chiasson GRAVOIS et al.
v.
TRAVELERS INDEMNITY COMPANY et al.
No. 6247.
Court of Appeal of Louisiana, First Circuit.
March 8, 1965.
Rehearings Denied April 12, 1965.
Writ Refused June 7, 1965.
*551 Charles S. Becnel, of Becnel & Kliebert, Vacherie, for appellants.
A. Deutsche O'Neal, of O'Neal & Waitz, Houma, for appellees.
Before ELLIS, LOTTINGER, HERGET, LANDRY and REID, JJ.[*]
REID, Judge.
This is a suit for tort brought by Mrs. Mary Chiasson Gravois, individually and as the duly qualified administratrix of the succession of her husband, Stephen J. Gravois, and also as the duly qualified tutrix of her two minor children, Kimberly John Gravois and Stephanie Maria Gravois, for the death of her husband Stephen J. Gravois. The suit was brought against the Jeffers Construction Company and the individual partners, namely, J. Earl Boudreaux, Ray Boudreaux and Chase Jeffers, and its insurer Travelers Indemnity Company.
Plaintiff alleged that on February 18, 1960, Stephen J. Gravois was working on a sulphur mine installation owned and operated by Freeport Sulphur Company located approximately seven miles south of Grand Isle and more than a marine league from the shore of the State of Louisiana. There was no dispute as to the fact that the Freeport Sulphur mine was approximately seven miles south of Grand Isle and neither was it disputed that the decedent Stephen J. Gravois was, on February 18, 1960, a regular employee of Freeport Sulphur Company and a member of an installation crew working on the mine complex belonging to Freeport Sulphur Company. The plaintiff was granted an award and was at the time of the trial receiving payments under the Longshoremen's and Harbor Workers' Act.
Plaintiff had brought an action in the United States District Court for the Eastern District of Louisiana as well as in the 17th Judicial District Court of the State of Louisiana. The Federal Court action has been stayed pending the outcome of this suit and counsel for plaintiff states in his brief it will be heard only if the State Court holds that it has no jurisdiction in this case.
The record shows that a labor contract had been entered into between Jeffers Construction Company and Freeport Sulphur Company wherein Jeffers Construction Company agreed to furnish labor, equipment, and supervision as required by Freeport Sulphur Company and that Jeffers Construction Company would be considered as an independent contractor with regard to the work done thereunder.
*552 Plaintiff contends the decedent's death was caused by negligence of employees of Jeffers Construction Company and that under the provisions of the Longshoremen's and Harbor Workers' Act, 33 U.S.C.A. § 933(a), there is reserved to the third person entitled to compensation a third party remedy in the event that the injured party or his representative determines that some person other than the employer or person or persons in his employ is liable for damages.
In order to bring this action under the Longshoremen's and Harbor Workers' Act plaintiff's counsel urges in his brief the provisions of the Outer Continental Shelf Lands Act, 43 U.S.C.A. § 1333(c) which reads:
"With respect to disability or death of an employee resulting from any injury occurring as a result of operations described in subsection (b) of this section, compensation shall be payable under the provisions of the Longshoremen's and Harbor Workers' Compensation Act. * * *"
He then alleges the wrongful death of plaintiff was directly caused by the negligence of third parties, namely, employees of the Jeffers Construction Company.
Plaintiff's suit then is based upon the provisions of 46 U.S.C.A. §§ 761-767, entitled "Death on the High Seas Act", which provides that the personal representative of the decedent may maintain a suit for damages in the District Courts of the United States. In the alternative plaintiff alleges that in the event the Death on the High Seas Act is not applicable, suit could be brought under the laws of the State of Louisiana under the "saving to suitors clause" of 28 U.S.C.A. § 1333(1) which provides in cases of admiralty that:
"The District Courts shall have original jurisdiction, exclusive of the courts of the State, of:
"(1) Any civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled."
The theory of the plaintiff's case is all important in the issue here presented as the main point is the question of jurisdiction of the State Court.
In summary, the plaintiff's theory of the case is that she assumes that the structure at issue is within the Outer Continental Shelf, and as the Outer Continental Shelf Lands Act provides that the exclusive remedy for the employee is the Longshoremen's and Harbor Workers' Act which permits either the employee or his representative to bring an action of tort against a third party, she is entitled to bring this action under the Death on the High Seas Act, or, under the "savings to suitors clause" under the laws of the State of Louisiana and under Article 2315 of the LSA-Civil Code.
Exceptions of no cause of action and of lack of jurisdiction were filed and an answer in the form of a general denial, with a plea of contributory negligence was filed. All of the exceptions were referred to the merits because the Trial Judge wanted to hear the entire case on the facts. At the time of the trial defendants reurged their exceptions but the Trial Judge felt it was unnecessary to go into a long discussion of the exceptions and decided to dispose of the case on the facts "and not on any delicately posed question of law."
The Trial Court did pass on the question of jurisdiction and found that the Court did have jurisdiction under the case of Presley v. Upper Mississippi Towing Corporation, La.App., 141 So.2d 411. He then concluded as a matter of fact that the Jeffers Construction Company, its employees and agents were free from any negligence in this case and therefore there could be no judgment against them and he dismissed plaintiff's suit.
It is from that judgment plaintiff has appealed.
*553 In the opinion of this Court, the prime question at issue is the question of jurisdiction. An exception to the jurisdiction ratione materiae was filed by the defendants although no specific grounds were raised for the basis of the exception. On this appeal the question of jurisdiction is treated by both parties in an offhanded manner and it could almost be said defendants have abandoned their argument on the question of jurisdiction. Nevertheless, the question of whether or not the Courts of the State of Louisiana would have jurisdiction over the subject matter is one that cannot be avoided, nor, can it be waived or consented to by the parties, even if they so intended. LSA-C.C. Art. 3.
Jurisdiction in this case is determined by the provisions of the Outer Continental Shelf Lands Act, 43 U.S.C.A. § 1331 through § 1343. Section 1331(a) defines the Outer Continental Shelf as follows:
"The term `outer Continental Shelf' means all submerged lands lying seaward and outside of the area of lands beneath navigable waters as defined in section 1301 of this title, and of which the subsoil and seabed appertain to the United States and are subject to its jurisdiction and control."[1]
Section 1332 reads as follows:
"(a) It is declared to be the policy of the United States that the subsoil and seabed of the outer Continental Shelf appertain to the United States and are subject to its jurisdiction, control, and power of disposition as provided in this subchapter.
"(b) This subchapter shall be construed in such manner that the character as high seas of the waters above the outer Continental Shelf and the right to navigation and fishing therein shall not be affected."
Section 1333 reads in pertinent part as follows:
"(a) (1) The Constitution and laws and civil and political jurisdiction of the United States are extended to the subsoil and seabed of the outer Continental Shelf and to all artificial islands and fixed structures which may be erected thereon for the purpose of exploring for, developing, removing, and transporting resources therefrom, to the same extent as if the outer Continental Shelf were an area of exclusive Federal jurisdiction located within a State: Provided, however, That mineral leases on the outer Continental Shelf shall be maintained or issued only under the provisions of this subchapter. (Emphasis ours).
"(2) To the extent that they are applicable and not inconsistent with this subchapter or with other Federal laws and regulations of the Secretary now in effect or hereafter adopted, the civil and criminal laws of each adjacent State as of August 7, 1953 are declared to be the law of the United States for that portion of the subsoil and seabed *554 of the outer Continental Shelf, and artificial islands and fixed structures erected thereon, which would be within the area of the State if its boundaries were extended seaward to the outer margin of the outer Continental Shelf, and the President shall determine and publish in the Federal Register such projected lines extending seaward and defining each such area. All of such applicable laws shall be administered and enforced by the appropriate officers and courts of the United States. State taxation laws shall not apply to the outer Continental Shelf. (Emphasis ours).
"(3) The provisions of this section for adoption of State law as the law of the United States shall never be interpreted as a basis for claiming any interest in or jurisdiction on behalf of any State for any purpose over the seabed and subsoil of the outer Continental Shelf, or the property and natural resources thereof or the revenues therefrom.
"(b) The United States district courts shall have original jurisdiction of cases and controversies arising out of or in connection with any operations conducted on the outer Continental Shelf for the purpose of exploring for, developing, removing or transporting by pipeline the natural resources, or involving rights to the natural resources of the subsoil and seabed of the outer Continental Shelf, and proceedings with respect to any such case or controversy may be instituted in the judicial district in which any defendant resides or may be found, or in the judicial district of the adjacent State nearest the place where the cause of action arose."
We are here dealing with a fixed structure as defined by Section 1333 which is, by admission of all parties, in the Gulf of Mexico seven miles south of Grand Isle. It is, therefore, necessary to determine whether or not the State Courts of Louisiana have jurisdiction covering a tort claim arising out of the Outer Continental Shelf Lands Act. Regarding the Trial Court's finding as to jurisdiction, it should be pointed out that the Presley case, supra, relied on by the Trial Judge, deals with the Jones Act which specifically gives jurisdiction under certain circumstances to both the State and Federal Courts, but which Act is not appropriate here. It would follow that the Death on the High Seas Act is inappropriate as we are not dealing with a death over navigable water on the high seas but are dealing with an offshore structure which, under 43 U.S.C.A. § 1333, is placed under the meaning of the Outer Continental Shelf Lands Act. It would therefore follow that if the State Court should have jurisdiction the jurisdiction could only arise out of the Outer Continental Shelf Lands Act, which Act expresses adoption of the Longshoremen's and Harbor Workers' Act, 33 U.S.C.A. § 901, as the basis of compensation for death or disability of an employee and, as mentioned in plaintiff's brief, this Act provides for suits in tort against a third party under Section 933.
In Pure Oil Company v. Snipes, 293 F. 2d 60, the United States Court of Appeal, Fifth Circuit, held:
"* * * Of course § 933 does not purport to define the substantive basis upon which the third person `is liable in damages' to the injured employee. It does not confine it to federal law, or to state law, or to maritime law, to common law or to civil law. Presumably it embraces whatever law is legally available. * * *"
It might be assumed from a reading of 43 U.S.C.A. § 1332, quoted above, that State law could apply and that under the saving to suitors clause of 28 U.S.C.A. § 1331, quoted above, the State Courts would have jurisdiction. However, any such supposition on the part of this Court is meaningless in view of the holding of the U. S. *555 Court of Appeal in the Pure Oil Company case, supra, that under the Outer Continental Shelf Lands Act only Federal Maritime law was applicable. In that case the injury occurred on a fixed drilling platform owned and controlled by Pure Oil Company. It rested permanently on vertical upright members securely affixed to the ocean floor. The platform was located approximately 65 miles off the coast of Louisiana and was, in the opinion of the Court, substantially seaward of Louisiana's historic extended maritime boundary recognized in the Submerged Lands Act, 43 U.S.C.A. §§ 1301-1315, and whether measured in terms of Louisiana's claim or the boundary finally delineated in United States v. State of Louisiana, Texas, Mississippi, Alabama and Florida, 363 U.S. 1, 80 S.Ct. 961, 4 L.Ed.2d 1025, this platform was in the area defined in the Outer Continental Shelf Lands Act. In that case plaintiff was not working for Pure Oil Company but was an employee of Loffland Brothers Drilling Company. Loffland had undertaken to drill two wells from the platform. Loffland was described as an independent contractor (Jeffers was so called in its contract with Freeport). The claim of Snipes against Pure Oil was a familiar suit against a third party and, as mentioned by the Court, brought under Section 933 of the Longshoremen's and Harbor Workers' Compensation Act which was adopted by the Outer Continental Shelf Lands Act. The Court in the Pure Oil case held that the accident did not happen in Louisiana nor did it happen in waters which Louisiana could regard as within her territorial boundaries and "if Louisiana law is to apply, it is because Congress has specified that this is so." The Court pointed out that Pure Oil contended this is the consequence of Section 1333(a) (2) providing for the extension of the laws of adjacent states to the outer Continental Shelf. The issue in the Pure Oil Company case was whether or not the equitable doctrine of laches controlled the timeliness of filing suit or whether the Louisiana one year statute of limitations applied. The Court concluded that only Federal Maritime law was applicable, stating:
"We think that a consideration of both intrinsic and extrinsic factors requires the conclusion that it was the intention of Congress that (a) this occurrence be governed by Federal, not State, law, and (b) that the Federal law thereby promulgated would be the pervasive maritime law of the United States. In connection with the latter phasethe choice by Congress of maritime lawit is again important to keep in mind that we are in an area in which Congress has an almost unlimited power to determine what standards shall comprise the Federal law."
The Court examined Title 43, Sec. 1332, cited above, dealing with the extent of the law of the adjoining states to the outer Continental Shelf and concluded:
"* * * And second, it was a determination that this matter could not adequately be left to the adjacent states either in the creation of the underlying substantive standards or in their enforcement. Of course enforcement and effectuation of such congressional policy makes the question of sanctions, including that of civil tort liability, of like congressional concern."
Therefore, it would follow that as the Court has stated that only Federal Maritime law would be applicable, then under 28 U.S. C.A. § 1331(1) the Federal District Courts would have original jurisdiction exclusive of the Courts of the State and the saving to suitors clause of 28 U.S.C.A. § 1331 is meaningless in this context because the Court has said there is no other remedy in such a case and cannot be used as a means of conferring jurisdiction upon this Court. Moreover, the last sentence of Section 1333(a) (2) provides that whatever the applicable laws may be they are to be "administered by * * * the courts of the United States" which strongly implies though it does not explicitly declare exclusive jurisdiction.
*556 See also Touchet v. Travelers Indemnity Company, D.C., 221 F.Supp. 376 (1963) in which the Court, citing the Pure Oil Company case, held that Federal, not State, law governs recovery of oil field laborers for injuries sustained while working on structures located on the outer Continental Shelf.
Therefore, as the Freeport Sulphur mine structure involved in this case is within the limits of the outer Continental Shelf the Federal Courts have exclusive jurisdiction under the provisions of 43 U.S.C.A. § 1333, supra. The clear intent of the Act was to vest all civil and political jurisdiction in matters involving the off shore drilling activities on the outer Continental Shelf in the exclusive Federal Court jurisdiction. Had Congress intended to grant concurrent jurisdiction to the State Courts it would have so specified in this Act as they did in the Jones Act. The failure to do so shows their intention to retain jurisdiction in the United States Courts.
In regard to the "savings to suitors" clause of the Admiralty Jurisdiction Law 28 U.S.C.A. § 1333, we believe this clause has no application to matters involved on the outer Continental Shelf under the provision of said Section 1333, 43 U.S.C.A., supra.
We are, therefore, of the opinion that our Learned Brother below committed error in failing to sustain the exception to the jurisdiction ratione materiae filed in this case. In view of this finding it will not be necessary to pass on the merits herein.
For these reasons it is ordered, adjudged and decreed that the ruling of the District Court overruling the exception to the jurisdiction ratione materiae is hereby overruled, and judgment is rendered herein sustaining said exception and dismissing suit on these grounds. In all other respects the judgment of the Lower Court is affirmed.
Reversed in part, rendered in part, and affirmed.
LANDRY, Judge (dissenting).
With all due respect to my esteemed colleagues concurring in the majority opinion rendered herein, I must respectfully disagree with their conclusion that state courts lack jurisdiction ratione materiae of in personam actions seeking recovery for the alleged wrongful death of an individual killed on the Outer Continental Shelf as defined in 43 U.S.C.A. § 1301 and § 1331 et seq., known as the Outer Continental Shelf Act.
I understand the majority opinion to hold the provisions of the aforesaid Outer Continental Shelf Act evidence Congressional intent to vest Federal District Courts with exclusive original jurisdiction of all civil death claims including in personam actions arising from incidents occurring on the Outer Continental Shelf thereby precluding trial of such causes in the courts of the several states. Based on the conclusions stated, the majority has ordered dismissal of plaintiff's action on the ground that the state court lacks jurisdiction over the subject matter of plaintiff's stated cause of action.
In so concluding, I believe my worthy colleagues have fallen into error because, in my judgment, the state courts may take cognizance of an action of the character herein asserted irrespective of the fact that the incident giving rise thereto occurred within the federally defined limits of the Outer Continental Shelf. In short, I believe the subject matter of plaintiff's cause falls within a field in which state courts are vested with original jurisdiction concurrent to that of the Federal District Courts.
The question presented is merely whether the Outer Continental Shelf Act invests United States District Courts with exclusive original jurisdiction in civil causes coming under its provisions thereby precluding jurisdiction of state courts, or whether the field is one which federal laws do not entirely preempt thereby vesting concurrent *557 jurisdiction in state courts of actions in personam under the "saving to suitors" clause of the Federal Judiciary Act of 1789 and the saving clause of the federal statute vesting jurisdiction in the federal courts in actions on maritime torts.
The applicable provisions of the Outer Continental Shelf Act provide as follows:
43 U.S.C.A. § 1331. Definitions
"When used in this subchapter
"(a) The term `outer Continental Shelf' means all submerged lands lying seaward and outside of the area of lands beneath navigable waters as defined in section 1301 of this title, and of which the subsoil and seabed appertain to the United States and are subject to its jurisdiction and control; * * *"
43 U.S.C.A. § 1332. Congressional declaration of policy; jurisdiction; construction
"(a) It is declared to be the policy of the United States that the subsoil and seabed of the outer Continental Shelf appertain to the United States and are subject to its jurisdiction, control, and power of disposition as provided in this subchapter. * * *"
43 U.S.C.A. § 1333. Laws and regulations governing landsConstitution and United States laws; laws of adjacent States; publication of projected States lines; restriction on State taxation and jurisdiction
"(a) (1) The Constitution and laws and civil and political jurisdiction of the United States are extended to the subsoil and seabed of the outer Continental Shelf and to all artificial islands and fixed structures which may be erected thereon for the purpose of exploring for, developing, removing, and transporting resources therefrom, to the same extent as if the outer Continental Shelf were an area of exclusive Federal jurisdiction located within a State: Provided, however, That mineral leases on the outer Continental Shelf shall be maintained or issued only under the provisions of this subchapter.
"(2) To the extent that they are applicable and not inconsistent with this subchapter or with other Federal laws and regulations of the Secretary now in effect or hereafter adopted, the civil and criminal laws of each adjacent State as of August 7, 1963 are declared to be the law of the United States for that portion of the subsoil and seabed of the outer Continental Shelf, and artificial islands and fixed structures erected thereon, which would be within the area of the State if its boundaries were extended seaward to the outer margin of the outer Continental Shelf, and the President shall determine and publish in the Federal Register such projected lines extending seaward and defining each such area. All of such applicable laws shall be administered and enforced by the appropriate officers and courts of the United States. State taxation laws shall not apply to the outer Continental Shelf.
* * * * * *
"(b) The United States district courts shall have original jurisdiction of cases and controversies arising out of or in connection with any operations conducted on the outer Continental Shelf for the purpose of exploring for, developing, removing or transporting by pipeline the natural resources, or involving rights to the natural resources of the subsoil and seabed of the outer Continental Shelf, and proceedings with respect to any such case or controversy may be instituted in the judicial district in which any defendant resides or may be found, or in the judicial district of the adjacent *558 State nearest the place where the cause of action arose.
"(c) With respect to disability or death of an employee resulting from any injury occurring as the result of operations described in subsection (b) of this section, compensation shall be payable under the provisions of the Longshoremen's and Harbor Workers' Compensation Act. For the purposes of the extension of the provisions of the Longshoremen's and Harbor Workers' Compensation Act under this section"
It must be conceded that if this were a claim for compensation, the provisions of 43 U.S.C.A. § 1332(c) would make the Longshoremen's and Harbor Workers' Act applicable. That act would be the plaintiff's exclusive remedy for compensation, and an action based on the Louisiana Workmen's Compensation Law would be dismissed. See Goodart v. Maryland Casualty Company, La.App., 139 So.2d 567. Exclusive original jurisdiction of compensation claims under the Longshoremen's and Harbor Workers' Act is vested in the United States Employees' Compensation Commission, which administers the Act through a Deputy Commissioner of the Bureau of Employees' Compensation, U.S. Department of Labor.
However, persons entitled to compensation under the Longshoremen's and Harbor Workers' Act are nevertheless entitled to bring an action against a third-party tortfeasor. This is commonly referred to as the "third party election" provided under 33 U.S.C.A. § 933. That act likewise provided that if the person entitled to compensation elects to receive compensation payments and does not file suit for damages against a third-party tortfeasor within a fixed period, the acceptance of compensation payments operates as an assignment to the employer of the claimant's rights to recover damages against third persons. Detailed provisions are made for the distribution as between employer and claimant of any amounts recovered from the third party.
It is of the utmost importance that in the instant case plaintiffs sue under the provisions of 46 U.S.C.A. §§ 761-767 entitled "Death on the High Seas Act" and alternatively under the laws of Louisiana pursuant to the "saving to suitors" clause of 28 U.S.C.A. § 1331, vesting exclusive original jurisdiction in Federal District Courts of all cases of admiralty or maritime jurisdiction.
I believe it important to bear in mind that the Longshoremen's and Harbor Workers' Act does not purport to set up substantive or procedural rights, rules or remedies affecting any claim for damages against a third party. It merely is intended to make the Act the exclusive remedy only as between the employer and the employee, and to preserve any other rights and remedies the employee (or by assignment, the employer) might have against a third party. This is recognized in the case of Pure Oil Company v. Snipes, 5 Cir., 293 F.2d P.2d 60, wherein the court said:
"* * * of course § 933 does not purport to define the substantive basis upon which the third person `is liable in damages' to the injured employee. It does not confine it to federal law, or to state law, or to maritime law, to common law or to civil law. Presumably it embraces whatever law is legally available. But § 933 certainly undertakes to secure to the injured employee whatever rights to damages might be open. The provisions of § 905 prescribing that the Longshoremen's Act is the exclusive liability of the employer does not operate for the benefit of anyone else and certainly not for a third party. Ryan Stevedoring Co. v. Pan-Atlantic Steamship Corp., 1956, 350 U.S. 124, at pages 130-131, 76 S.Ct. 232, 100 L.Ed. 133, 1956 AMC 9."
*559 In Pure Oil Company v. Snipes, supra, the Court left no doubt that the applicable law on the Outer Continental Shelf is the United States general maritime law, and any rights which plaintiffs have in the present case must therefore ultimately stem from federal law.
I believe the fundamental error in the majority opinion lies in misapplication of the rule announced in the Snipes case, supra. While the majority correctly interprets the Snipes case, supra, as holding that Federal law exclusively controls and applies to all civil causes arising on the Outer Continental Shelf, it mistakenly concludes state courts therefore lack concurrent jurisdiction. The majority error, I believe, consists in the failure to distinguish between the question of exclusive original Federal jurisdiction and that of the law applicable irrespective of the tribunal wherein the suit may be prosecuted.
As I view the instant matter, the sole question presented by this appeal is whether the courts of this state have authority or jurisdiction to adjudicate plaintiffs' alternative claims irrespective of which law must be applied in the determination thereof. This distinction is perhaps more clearly highlighted in the following discussion of remedies "saved to suitors" by the Federal Judiciary Act, which appears in 2 C.J.S. verbo Admiralty § 59, p. 118, as follows:

"Actions at law or in state courts. The general rule that state courts have concurrent jurisdiction of actions in personam, under the saving clause of the statute vesting jurisdiction in the federal courts, which has been noted in § 8, applies to an action for a maritime tort. As to the law which should be applied, without regard to the court where he might ask relief, the rights of the person injured are those, and only those, recognized by the law of the sea." See also Chelentis v. Luckenbach S. S. Co., 247 U.S. 372, 38 S.Ct. 501, 62 L.Ed. 1171; Chappell v. Bradshaw, 128 U.S. 132, 9 S.Ct. 40, 32 L.Ed. 369.
Many cases from the State of New York are cited in the notes of Corpus Juris Secundum to the same effect, and to the effect that in order to deprive a state court of jurisdiction exclusive federal jurisdiction must be established by clear evidence of intent.
The following is found in 1 Am.Jur. 558 verbo Admiralty § 19:
"It is only the privilege to prosecute for a maritime tort in the common-law courts which is saved, not the right of election to determine that the defendant's liability is to be measured by common-law, rather than by maritime, standards. He has his remedy at common law, but his recovery and the precise relief to be afforded him are determined by the admiralty law, which is applied whether he sues in the common-law or in the admiralty court. He may pursue his remedy at common law in the state court, but that court must administer the admiralty law. He may select his court, but cannot add to or change his rights or the defendant's rights, which are the same in both forums."
In Presley v. Upper Mississippi Towing Corporation, La.App., 141 So.2d 411, a case arising under the Federal Jones Act, this court said:
"A seaman (or in the event of his death, his beneficiary) is entitled to the full benefit of applicable Federal law when a state court undertakes adjudication of his claim or claims arising under maritime law. McAllister v. Magnolia Pet. Co., 357 U.S. 221, 78 S.Ct. 1201, 2 L.Ed.2d 1272."
I believe confusion induced by the fact that the statute deals with the public law concepts of sovereignty and criminal jurisdiction must be avoided. The majority suggest that the Outer Continental Shelf is to *560 be treated "as if it were an area of exclusive Federal jurisdiction located within a State," as though it were a post office, or Indian or military reservation. While it must be conceded that criminal jurisdiction in cases of crimes committed upon property belonging to or under the exclusive control of the federal government is a field which has been preempted by the federal government to the extent that such offenses are beyond the jurisdiction of state courts, I believe it must likewise be acknowledged said line of jurisprudence is inapplicable to civil cases. I am unaware of any authority which holds that a state court is without jurisdiction in a civil matter where the cause of action arises in such an enclave of exclusive federal jurisdiction. I believe no citation of authority necessary in support of the proposition that jurisdiction in civil actions in personam may be at the domicile of the defendant notwithstanding the tort or other cause of action arose or occurred outside the territorial boundaries and "jurisdiction" of the forum state, and the court may therefore be called upon to apply the law of a foreign jurisdiction in such a civil matter.
The jurisdiction which the Congress has reserved exclusively in 43 U.S.C.A. § 1332 and § 1333(a) (1), is political and legislative jurisdictionnot judicial jurisdiction.
In 16 Am.Jur.2d 19 verbo Conflict of Laws, Sec. 8, we find the following:
"* * * There is a field of concurrent power in which the state may legislate until the power is actually exercised by Congress. Thus, a state may legislate upon matters which are local in character although embraced within the federal authority, until such time as the federal authority may be exercised by act of Congress. The states, however, cannot invade a field which belongs exclusively to Congress. Likewise, where Congress has legislated upon a subject which is within its constitutional control and over which it has the right to assume exclusive jurisdiction and has manifested its intention to deal therewith in full, the authority of the states is necessarily excluded, and any state legislation on the subject is void * * *."
The "exclusive jurisdiction" which Congress has manifested its intention to assert in the Outer Continental Shelf Lands Act refers to the authority of Congress to legislate fully with respect to such submerged lands and artificial islands and structures to the exclusion of any legislative action by the states. This type of "jurisdiction" has nothing to do with the jurisdiction of courts.
The Federal Judiciary Act of 1789, through the "saving to suitors" clause permits state courts to take concurrent jurisdiction in actions in personam on maritime torts. Knapp, S. & Co. Company v. McCaffrey, 177 U.S. 638, 20 S.Ct. 824, 44 L.Ed. 921; Chelentis v. Luckenbach Steamship Co., 247 U.S. 392, 38 S.Ct. 501, 62 L.Ed. 1171.
The question is suggested whether the provisions of 43 U.S.C.A. § 1333(b) conferring original jurisdiction upon federal district courts in cases and controversies arising out of or in connection with mineral operations on the Outer Continental Shelf is intended to confer exclusive original jurisdiction in such tribunals. To so hold § 1333(b) must be deemed to have repealed the "saving to suitors" clause of the judiciary act insofar as said "saving to suitors" clause may otherwise apply with respect to cases arising from mineral operations on the Outer Continental Shelf.
To so interpret the Outer Continental Shelf Act adds yet another exception to the presently existing complications obtaining with respect to the concurrent jurisdiction of state courts in personal injury and death claims arising under circumstances vesting original jurisdiction over such actions in the federal district courts. Moreover, to so hold is to rule counter to the obvious trend of the federal courts in recent years to *561 recognize concurrent jurisdiction in state courts under the "saving to suitors" clause of the federal judiciary act. The rights of a seaman injured on the Outer Continental Shelf to sue a third party in a state court under the applicable Jones Act is in no way affected or abridged by the provisions of the Outer Continental Shelf Act. To deny state courts jurisdiction over the third party suit of an employee not a seaman because the injury occurred on the Outer Continental Shelf (as the majority holds) is to create a jurisdictional distinction or differentiation between the seaman and the employee, which differentiation does not exist if the injury occurred other than on the Outer Continental Shelf. Considering what I observe to be the recent trend of increasing federal inclination to permit state concurrent jurisdiction in these areas, if a difference was intended between the jurisdiction permitted state courts in a tort case filed by a person employed on the Outer Continental Shelf as distinguished from Jones Act cases on the Outer Continental Shelf and other maritime torts, Congressional evidence of such intent would undoubtedly have been expressed. Moreover, had Congress intended the Outer Continental Shelf Act to repeal prior legislation placing all such actions in the same category, I believe it would have expressly so stated. No such intent is expressed in or may be inferred from the language employed in 43 U.S.C.A. § 1333(b). It appears this section was merely intended to vest original jurisdiction in federal civil district courts rather than the federal admiralty courts. It also makes venue provisions.
In its early history the Jones Act clause providing that jurisdiction should be in the federal district court of the employer's domicile was interpreted by some district courts to give exclusive jurisdiction to the Federal courts. But the Supreme Court, in Engel v. Davenport, 271 U.S. 33, 46 S.Ct. 410, 70 L.Ed. 813, held that this sentence was not intended to affect the general jurisdiction of the Federal courts, but only to prescribe the venue of actions brought thereunder. The Court based its reasoning on the "saving to suitors" clause of the Judiciary Act which had been interpreted to mean that a state court could assume jurisdiction in an action in personam although the injury occurred on the high seas. The court strengthened its opinion by alluding to the provisions of the Employers' Liability Act, incorporated in the Jones Act by generic reference, which conferred concurrent jurisdiction in the Federal Courts. It might be suggested that the Jones Act cases are distinguishable on the basis that the Jones Act incorporated specific provisions dealing with concurrent jurisdiction. However, in Engel v. Davenport, supra, the court made it clear that the jurisprudence interpreting the "saving to suitors" clause impelled the conclusion that the state courts possessed concurrent jurisdiction.
The majority suggests that the "saving to suitors" clause is meaningless in the instant case because there is no remedy available to plaintiffs other than that provided by Federal statute. I must disagree with this conclusion inasmuch as the Outer Continental Shelf Act expressly adopts as Federal law those state laws not in conflict with existing Federal laws and which state laws may provide a remedy available by virtue of the "saving to suitors" clause of the Federal Judiciary Act and also by 28 U.S.C.A. § 1333(1), which latter statute confers original jurisdiction on Federal District Courts in civil causes of admiralty or maritime jurisdiction while simultaneously reserving to litigants all other remedies to which they are otherwise entitled.
Federal law is settled to the effect that Congress may adopt state legislation as federal law in places of exclusive political and legislative jurisdiction of the United States. Murray v. Gerrick & Co., 291 U.S. 315, 54 S.Ct. 432, 78 L.Ed. 821; Capetola v. Barclay White Co., 3 Cir., 139 F.2d 556, 153 A.L.R. 1046 which cases involved the Puget Sound and Philadelphia Navy Yards, respectively.
*562 In 43 U.S.C.A. § 1333(a) (2) Congress expressly adopts for the Outer Continental Shelf the laws of the adjacent states as of August 7, 1963, as the law of the United States "to the extent that they are applicable and not inconsistent with Federal law."
In this regard it is worthy of note that plaintiffs allege two causes of action in the alternative, seeking first recovery under 46 U.S.C.A. § 761 et seq., the Death on the High Seas Act, and alternatively they claim under the wrongful death laws of the State of Louisiana. (No survivorship claims are made for the pain and suffering of the decedent, which might require an examination of laws applicable to those cases.) If plaintiffs' sole claim were under the Death on the High Seas Act, unquestionably the state courts would be without jurisdiction because of the provisions of that Act which have been interpreted as giving exclusive jurisdiction to the admiralty side of the federal courts. Higa v. Transocean Airlines, 9 Cir., 230 F.2d 780; Trihey v. Transocean Air Lines, Inc., 9 Cir., 255 F.2d 824. No other remedy exists under the general maritime law for the recovery of damages for wrongful death. The Harrisburg, 119 U.S. 199, 7 S.Ct. 140, 30 L.Ed. 358; Just v. Chambers, 312 U.S. 383, 61 S.Ct. 687, 85 L.Ed. 903.
Also if plaintiffs' cause of action arises under the Death on the High Seas Act, that Act would supercede any state wrongful death law. First National Bank in Greenwich v. National Airlines, Inc., 171 F.Supp. 528, affirmed 288 F.2d 621, certiorari denied, 368 U.S. 859, 82 S.Ct. 102, 7 L.Ed.2d 57; Batkiewicz v. Seas Shipping Co., D.C., 53 F.Supp. 802; In re Klein's Estate, 162 Misc. 589, 295 N.Y.S. 197.
However, it has been suggested in Pure Oil Company v. Snipes, 5 Cir., 293 F.2d 60, 63 n. 2, that where the death results from an accident occurring on an offshore structure in the Outer Continental Shelf, the Death on the High Seas Act may be inapplicable, because the wrongful act, neglect or default would not have occurred literally on the High Seas.
This then would leave plaintiffs without a remedy because maritime law provides no redress for wrongful death and the Death on the High Seas Act is inapplicable. Therefore, if state law is likewise ruled inapplicable, the result is reversion to ancient rules of admiralty and common law which afforded no remedy for loss of life thus creating a hiatus in the law. I seriously question that such a result was intended by Congress to apply to civil death actions arising on the Outer Continental Shelf.
In Pure Oil Company v. Snipes, 293 F.2d 60, the United States Court of Appeal, Fifth Circuit, reached a conclusion opposite to that attained in Capetola v. Barclay White Co., 3 Cir., 139 F.2d 556, both cases involving the question of applicability of state or federal rules governing the timeliness of filing actions. In the Capetola case which involved an incident transpiring in the Philadelphia Navy Yard, the Federal Court held applicability of the state statute of limitations. In the Pure Oil case, supra, the court in substance held applicable the federal doctrine of laches as opposed to Louisiana's law of prescription on the conclusion the provisions of the Outer Continental Shelf Act preempted the field of original civil jurisdiction of causes arising on the Outer Continental Shelf to the total exclusion of state courts.
Although Pure Oil v. Snipes, supra, was concerned only with the problem of whether Louisiana law of prescription or the equitable doctrine of laches was to apply to a "third-party election" case, the Court nevertheless proceeded to compare the Louisiana Workmen's Compensation Law and the Longshoremen's and Harbor Workers' Act in the following words:
"The provisions of § 905 prescribing that the Longshoremen's Act is the exclusive liability of the employer does not operate for the benefit of anyone else and certainly not for a third party.

*563 * * * * * *
"But that is not so in Louisiana * * * The Louisiana statute * * provides in substance that an employee of an independent contractor injured by the negligence of the third party for whom the independent contractor is performing the service has no right to recover damages if the work being performed was a part of the usual trade, business and occupation of such third party. His sole remedy against either his employer or such third party is under the Louisiana Compensation Act which itself carries the usual exclusive liability provision.
* * * * * *
"* * * What is true in Louisiana demonstrates that the congressional purpose to assure a right of action against the third party might be thwarted or completely prevented were the substantive principles to be those of the adjacent state. Congress knew from long experience the desirability if not the constitutional necessity of a substantial uniformity in dealing with matters maritime. It runs counter to the whole purpose of the Act to assume that Congress meant a matter of such importance as safety of life and limb should be left to the shifting policies of adjacent states." (Emphasis added.)
It appears the difference in the conclusions reached in the Capetola and Snipes cases, supra, is the finding in the latter authority that the provisions of the Outer Continental Shelf Act evidence Congressional recognition of "the desirabilityif not the Constitutional necessityof a substantial uniformity in dealing with matters maritime."
The foregoing analysis of the Snipes case does not necessarily mean it is authority for the proposition that no state laws are applicable to areas within the Outer Continental Shelf.
In Pure Oil Company v. Snipes, supra, the court was faced with conflicting provisions of state and Federal law, namely, the reservation of actions against third parties as contained in the state Workmen's Compensation Law and the similar reservation in the Federal Longshoremen's and Harbor Worker's Act; the state statute of prescription as opposed to the federal doctrine of laches. In the Snipes case, supra, the state law was found to be "inconsistent" with Federal law within the contemplation of 43 U.S.C.A. § 1333(a) (2) and the state law therefore could not apply.
I believe the case to be different where there is no conflict or inconsistency between the federal and state law. If 43 U.S.C.A. § 1333(a) (2) has any application at all, it must be where the Federal law gives no relief and makes no provision. The express wording of the Outer Continental Shelf Act adopting the laws of adjacent states as "the law of the United States" consistent with existing Federal law, in my view, expressly negates and rejects any possible Congressional intent to create a hiatus in the law in areas where there is no Federal law to which a claimant may turn for relief. If the true concern of Congress as stated in the Pure Oil case was the "reasonable safety of all persons working on such platforms without particular regard to their status as an employee, independent contractor, employee of an independent contractor, or service personnel" why then would Congress fail to provide for such persons relief similar to that provided in the Death on the High Seas Act for cases arising on the sea which surrounds structures constituting a part of the Continental Shelf? I can only conclude the reason to be that Congress considered adequate relief was afforded to such individuals by state wrongful death statute.
I believe therefore that this is a matter in which the state court has concurrent jurisdiction with Federal District Courts and therefore dissent from the ruling of the majority which concludes otherwise.

*564 On Rehearing
PER CURIAM.
Our initial opinion herein reversed the decision of the trial court insofar as said tribunal held it had jurisdiction over the subject matter of this controversy. Based on this determination, we ordered plaintiffs' suit dismissed for lack of jurisdiction in the trial court.
Applications for rehearing have been filed by defendants-appellees alleging certain matters which we believe have been fully covered and adequately disposed of in or original decree.
Pending disposition of the applications for rehearing, an intervention was prayed for on behalf of the State of Louisiana and permitted by this Court in conformity with the authority contained in LSA-C.C.P. Art. 1033.
The intervention of the State of Louisiana entered by the Honorable Jack P. F. Gremillion, Attorney General, suggests that certain language appearing in our initial decree may be interpreted as an attempt by this Court to judicially determine in this proceeding the extent to which the seaward boundary of the State of Louisiana projects or extends into the Gulf of Mexico.
The extent of the State's seaward boundary was not at issue in the trial of this cause, and we had no occasion to determine such a factual matter. In this connection we reiterate the following language contained in our initial decree:
"In summary, the plaintiff's theory of the case is that she assumes that the structure at issue is within the outer continental shelf, and as the Outer Continental Shelf Lands Act provides that the exclusive remedy for the employee is the Longshoremen's and Harbor Workers' Act which permits either the employee or his representative to bring an action of tort against a third party, she is entitled to bring this action under the Death on the High Seas Act or, under the "saving to suitors clause", under the laws of the State of Louisiana and under Article 2315 of the Louisiana Civil Code."
The position assumed by plaintiffs in the court below was not contradicted by appellees but rather was acquiesced in by defendants. With the record reflecting the foregoing, we disposed of the jurisdictional issue upon what we deemed to be the agreement of the parties to the effect that the accident occurred within the limits of the Outer Continental Shelf. Under such circumstances, we considered it neither pertinent nor necessary for this court to determine the seaward boundary of the State.
Inasmuch as we had no occasion in our original decree to determine factually and legally the location of the coast lines of the State of Louisiana landward of the sulphur mine or structure involved, we neither considered nor disposed of such issue. Neither did we purport to ascertain how far the seaward boundary of the State of Louisiana extends into the Gulf of Mexico from the coast line of the State. Nor did we undertake to determine whether the installation in question was located inside or outside of the seaward boundary of the State of Louisiana. On the contrary, we disposed of the issue presented upon plaintiffs' assertion the structure involved did in fact lie within the Outer Continental Shelf and defendants' acquiescence therein. On this basis we disposed of the issue presented as though the situs of the accident occurred on the Outer Continental Shelf without actually so deciding.
We are cognizant that in United States of America v. States of Louisiana, Texas, Mississippi, Alabama and Florida (1960), 362 U.S. 1, 121, 80 S.Ct. 961, 4 L.Ed.2d 1025, 1096, the Supreme Court of the United States left open the case for further orders and decrees including determination of the location of the coast lines of the defendant states. We further recognize the United States Supreme Court's exclusive *565 prerogative to make said determination and therefore do not intend that anything contained in our original decree shall in any way be construed as usurpation of the aforementioned authority vested in the United States Supreme Court.
Nothing contained in these applications for rehearing warrants change in any of the conclusions reached in our original opinion the effects of which are affirmed and declared unchanged.
Applications for rehearing denied.
Landry, J., concurs in the conclusions which render unnecessary a determination herein of the seaward boundary of the State of Louisiana.
NOTES
[*] Due to subsequent death of HERGET, J., this opinion is rendered by ELLIS, LOTTINGER, LANDRY, AND REID, JJ.
[1] Sec. 1301 defines "lands beneath navigable waters" thus:

"(1) all lands within the boundaries of each of the respective States which are covered by nontidal waters that were navigable under the laws of the United States at the time such States became a member of the Union, or acquired sovereignty over such lands and waters thereafter, up to the ordinary high water mark as heretofore or hereafter modified by accretion, erosion, and reliction;
"(2) all lands permanently or periodically covered by tidal waters up to but not above the line of mean high tide and seaward to a line three geographical miles distant from the coast line of each such State and to the boundary line of each such State where in any case such boundary as it existed at the time such State became a member of the Union, or as heretofore approved by Congress, extends seaward (or into the Gulf of Mexico) beyond three geographical miles, and
"(3) all filled in, made, or reclaimed lands which formerly were lands beneath navigable waters, as hereinabove defined."