332 So.2d 292 (1976)
Hilton VERRETT, Sr.
v.
OFFSHORE CREWS, INC., et al.
No. 10606.
Court of Appeal of Louisiana, First Circuit.
April 12, 1976.
Dissenting Opinion May 10, 1976.
Rehearing Denied May 24, 1976.
Writ Refused September 8, 1976.
*293 Bertrand M. Cass, Jr., New Orleans, and Bernard E. Boudreaux, Jr., Franklin, and Leonard A. Radlauer, New Orleans, for Offshore Crews.
Timothy J. McNamara, Lafayette, for Walker-Huthnance Offshore Co.
Before LANDRY, BLANCHE, COVINGTON, CHAISSON and PONDER, JJ.
PONDER, Judge.
Plaintiff, Hilton A. Verrett, Sr., a seaman, filed suit to recover for injuries he sustained allegedly caused by the negligence of defendants in allowing spillage of industrial waste from an offshore oil platform *294 to blow down onto the deck of a boat, the PATHFINDER, which was moored to a drilling platform, located in excess of fifty miles from the coast of Louisiana on the Outer Continental Shelf. He alleges the waste rendered the deck slippery to such an extent that it caused plaintiff, while working as Captain, to fall on July 17, 1971. Named as defendants are: Arthur Levy Boat Services, Inc. and Offshore Crews, Inc., the plaintiff's employers and owners of the vessel; Shell Oil Company, the owner of the platform; and Walker-Huthnance Offshore Company, the entity doing maintenance work on the structure.
Offshore Crews and Arthur Levy filed a third party demand against Walker-Huthnance demanding indemnity or contribution based on the allegation that their fault was only passive and technical and that Walker-Huthnance was actively and primarily at fault in causing plaintiff's injuries.
Shell Oil filed an exception to the state district court's jurisdiction over the subject matter. Walker-Huthnance filed an exception to the state district court's jurisdiction over the third party demands. The exceptions were based on the grounds that the claims of plaintiff and third party plaintiffs against them were governed by the Outer Continental Shelf Lands Act, 43 U.S.C.A. § 1331(b), which purportedly vests exclusive jurisdiction in federal court of all cases and controversies arising out of or in connection with any operations conducted on the Outer Continental Shelf.
The lower court rendered judgment sustaining the exception of lack of jurisdiction over the subject matter and dismissed plaintiff's suit and the third party demands of Offshore Crews and Arthur Levy as to exceptors. Offshore Crews and Arthur Levy have timely appealed. Plaintiff, Verrett, however, after partial trial, settled his claim with Offshore Crews and Arthur Levy for $112,000 and has not appealed dismissal of his suit as to exceptors. Thus, the judgment of the lower court dismissing plaintiff's suit as to Walker-Huthnance and Shell Oil is final.
The issue is whether the lower court had jurisdiction of the claim asserted in the third party petition of Offshore Crews and Arthur Levy against Walker-Huthnance pursuant to the Saving to Suitors Clause, which vests concurrent jurisdiction over admiralty and general maritime matters in the courts of the various states, or whether, the lower court did not have jurisdiction because the third party claims arose out of or in connection with exploration on the Outer Continental Shelf, over which, under the Lands Act exclusive jurisdiction is in federal court. Stated otherwise, did Congress intend by enactment of the Lands Act to require that all matters in any degree connected with stationary platform come under its jurisdictional umbrella, or did Congress intend to exclude those matters that, although having some physical causal connexity with stationary platforms, had connections with other matters with other jurisprudence and other jurisdictional mandates?
We hold that under the facts as presented, the Lands Act is inapplicable. Every occurrence arising out of operations conducted on fixed structures attached to the Outer Continental Shelf is not controlled by the Lands Act. The Lands Act does not usurp admiralty or general maritime jurisdiction that is clearly present, merely because the admiralty or general maritime claim technically or coincidentally is connected with offshore exploration. The very language of the Lands Act, its intended purpose, and the jurisprudence support this conclusion.
A brief resume of the law generally applicable to offshore litigation is necessary to explain properly this position.
Article III, Section 2 of the United States Constitution extends the "judicial power of the United States" to "all cases of admiralty and maritime jurisdiction." Congress *295 in Section 9 of the Judiciary Act of 1789 implemented this constitutional grant: ". . . the district courts . . . shall also have exclusive original cognizance of all civil causes of admiralty and maritime jurisdiction . . . saving to suitors, in all cases the right of a common law remedy, where the common law is competent to give it . . ."[1]
Neither the Constitution nor Congress defined admiralty or maritime claims. The courts adopted and enforced the general maritime laws then in effect, adding modifications as necessary. If a seaman was injured in consequence of the unseaworthiness of the ship, or of failure to supply and keep in order the proper appliances appurtenant to the ship, he was entitled to indemnity for his injuries against the vessel and its owner. If a seaman became sick, or was injured, in the service of the ship, he was entitled to maintenance and cure against the vessel and its owner.
In The Harrisburg, 119 U.S. 199, 7 S.Ct. 140, 30 L.Ed. 358 (1886), however, the Supreme Court held that no cause of action for wrongful death was provided by the general maritime law. In March, 1920, Congress enacted the Death on the High Seas Act[2] which sought to remedy the maritime law's deficiency on this subject. It provided a recovery for death caused by a wrongful act, neglect or default, that occurred on the high seas beyond a marine league from the shore of any state.
In June, 1920, Congress enacted the Jones Act,[3] which incorporated the wrongful death provisions of the Federal Employers' Liability Act.[4] Only seamen are entitled to Jones Act rights and remedies. In Engel v. Davenport, 271 U.S. 33, 46 S.Ct. 410, 70 L.Ed. 813 (1926) the Supreme Court held that state and federal courts had concurrent jurisdiction of Jones Act claims.
In 1948, amid confusion created by judicial interpretation of water-based incidents culminating on shore, Congress enacted the Extension of Admiralty Act.[5] Injuries caused by a vessel, even though culminated on land, were declared to be in admiralty.
In the early 1950's, offshore exploration for minerals was rapidly gaining momentum. Congress recognized "that the full development of the estimated values in the shelf area" would "require the efforts and the physical presence of thousands of workers on fixed structures in the shelf area. Industrial accidents, accidental death, peace, and order" required a body of law for their solution. Rodrigue v. Aetna Casualty and Surety Company, 395 U.S. 352, at 358, 89 S.Ct. 1835, at 1838, 23 L.Ed.2d 360 (1969). To fill this void Congress enacted the Outer Continental Shelf Lands Act, 43 U.S.C.A. § 1331 et seq. Congress was mindful of "the close relationship between the workers on the island and the adjoining States." Rodrigue, at 363, 89 S. Ct. at 363, 1841. Federal law was declared to be "exclusive in its regulation of shelf area." However, "since federal law, because of its limited function in a federal system, might be inadequate to cope with the full range of potential legal problems, the Act supplemented gaps in the federal law with the state law through the `adoption of State law as the law of the United States.'" Rodrigue, at 357, 89 S.Ct. at 1838.
*296 Third party defendant-appellee, Walker-Huthnance, argues that the very language of the Lands Act makes federal court the exclusive forum of third party plaintiffs' claims. "After first providing that the Constitution and laws and civil and political jurisdiction of the United States extends to the Outer Continental Shelf to the same extent `as if the Outer Continental Shelf were an area of exclusive Federal Jurisdiction located within a State' and thereafter in Paragraph 2 of Section 1333(a) providing that the Civil and Criminal Laws of each adjacent State as of August 7, 1953, were declared to be the law of the United States for that portion of the Outer Continental Shelf which would be within the area of that state if its boundaries were extended seaward to the outer margin of the shelf, the Congress then provided:
'All of such applicable laws shall be administered and enforced by the appropriate officers and Courts of the United States.'
Walker-Huthnance further argues, "To further quote from the Lands Act, 43 U.S.C. Section 1333, the Congress went even further and specified which of the many officers and Courts of the United States would be charged with the duty of administering and enforcing any given controversy by providing:
'The United States District Courts shall have original jurisdiction of cases and controversies arising out of or in connection with any operations conducted on the Outer Continental Shelf for the purpose of exploring for, developing, removing or transporting by pipeline the natural resources, or involving rights to the natural resources of the subsoil and seabed of the Outer Continental Shelf, and proceedings with respect to any such case or controversy may be instituted in judicial district in which any defendant resides or may be found, or in the Judicial District of the adjacent State nearest the place where the cause of action arose.'"
Appellee continues that, "Nowhere in the Outer Continental Shelf Lands Act do we find any provision for concurrent jurisdiction by State Courts. Indeed,the act expressly provides that the civil and political jurisdiction of the United States over the Outer Continental Shelf `shall be administered and enforced by appropriate officers and Courts of the United States.'"
This court is unwilling to adopt appellee's contentions. The Lands Act, when viewed as a whole, does not subject all controversies involving offshore drilling activities on the Outer Continental Shelf to exclusive Federal Court jurisdiction. Particularly, the Lands Act does not oust maritime remedies that are available independently from the location of the structures at sea.
The very purpose of the Lands Act indicates it was not intended to oust other Federal laws applicable by their own force; it was enacted to fill a substantive and jurisdictional void in our law. The platform workers and their families needed a body of law to protect them. As shown above, seamen and their employers were adequately covered by an extensive body of law. To hold that admiralty and general maritime jurisdiction are ousted by the Lands Act would thwart a long development and evolution of a system of laws designed to govern the peculiar needs of seamen and their employers.
Furthermore, the Lands Act itself, contrary to Walker-Huthnance's assertions, indicates that admiralty and general maritime jurisdiction, and all other maritime based rights and remedies were not to be affected by passage of the act. Section 1333(a)(2) of the Lands Act states in part, that "To the extent that they are applicable and not inconsistent with . . . other Federal laws . . . the civil and criminal laws of each adjacent State . . . are declared to be the law of the United States for . . . artificial islands and fixed structures erected thereon . . . All of such applicable laws [those not inconsistent *297 with Federal laws then applicable, e.g., admiralty] shall be administered and enforced by the appropriate officers and courts of the United States." (Emphasis and explanation added.) Thus, the Lands Act does not purport to usurp other federal laws applicable to the structures, such as Jones Act claims and an employer's general maritime right to indemnity. Only claims based on "applicable laws," those made applicable by the Lands Act and not inconsistent with other Federal laws, "shall be administered and enforced by the appropriate officers and courts of the United States."
This legal conclusion was, in part, also reached in Kimble v. Noble Drilling Corporation, 5th Cir. 1969, 416 F.2d 847. In Kimble, a seaman was injured twice while working on two separate stationary drilling platforms at sea. He instituted suit in federal district court against his employer under the Jones Act and against the owner of the platforms under the general maritime law. The lower court found both defendants liable.
The Fifth Circuit in affirming stated:
"In a final attempt to avoid liability, appellants argue correctly that the drilling platforms on which Kimble was injured were not vessels but artificial islands. As such, appellants argue, the platforms are governed not by admiralty but by the law of the adjacent State of Louisiana, which is `borrowed' as federal law on these structures by the Outer Continental Shelf Lands Act, 67 Stat. 462, 43 U.S.C. § 1331 et seq. (1964). This issue has in fact been decided exactly as appellants urge in Rodrigue v. Aetna Casualty & Surety Co., 1969, 395 U.S. 352, 89 S.Ct. 1835, 23 L.Ed.2d 360, but that decision does not help their case. The Outer Continental Shelf Lands Act does not oust admiralty law having a basis of applicability independent from the location of the platforms at sea; indeed, it specifically provides that the general law of the upland state is made the applicable federal law only to the extent that it is `not inconsistent with * * * other Federal laws.' In Rodrigue, the Supreme Court recognized this limitation. It simply reversed a holding that the Death on the High Seas Act applied to workmen on oil platforms at sea because `the Seas Act does not apply of its own force under admiralty principles' to men working on land. The case at bar is distinguishable in that the Jones Act and the general maritime law do apply of their own force here; they would still apply, in fact, even if we assumed that Kimble received his injuries in the heart of the Louisiana mainland, so long as he was acting at the time as a seaman in the service of his ship . . . Here, Kimble's status as a seaman depended not on the location of the platforms at sea but upon his assignment to, and responsibilities on, the tender, which was unquestionably a vessel." (emphasis added)
The instant case is much stronger than Kimble. Verrett was injured not on the platform, but in the actual service and employ of his ship.
In Oppen v. Aetna Insurance Co., 9th Cir. 1973, 485 F.2d 252, the court was faced with the question of whether the Lands Act was applicable. Crude oil escaped from beneath a platform located on the Outer Continental Shelf and eventually permeated the waters of the Santa Barbara Channel and harbor. Several pleasure boats were damaged. Special masters determined that general maritime law was applicable to the boat owners' claims and allowed recovery for physical damage to the vessels. However, the masters disallowed recovery for loss of use of the vessels because under general maritime law such loss was not recoverable.
The boat owners appealed arguing that California law, which allowed recovery for the claims, was applicable by virtue of the Lands Act and Rodrigue. The Ninth Circuit affirmed noting that Rodrigue merely held that under admiralty principles the *298 Death on the High Seas Act did not apply to the death of Rodrigue and Dore. The Court stated that "it is clear that the Court by its holding in Rodrigue did not intend to imply that every occurrence arising out of operations conducted on a fixed platform attached to the Outer Continental Shelf would necessarily be governed by state law rather than federal maritime law." Oppen, at 255. The "Outer Continental Shelf Lands Act, as interpreted in Rodrigue, does not preclude the application of maritime law to claims with a maritime nexus wholly apart from the location of the platform on the navigable waters." Oppen, at 256.
In re Dearborn Marine Service, Inc., 499 F.2d 263 (5th Cir. 1974), a ship was moored to a platform located on the Outer Continental Shelf. An explosion occurred on the platform and a ball of fire descended onto the ship. The crew members, the Captain, and a platform worker on the ship at the time of the explosion were killed. Much of the lengthy opinion is concerned with the rights of the family of the platform worker. The Fifth Circuit determined that the Lands Act controlled as to the platform worker's rights and remedies against the platform owner and operators. However, the court recognized that the Captain and crew members, clearly traditional seamen, maintained their traditional maritime rights under the Jones Act, Death on the High Seas Act and general maritime law.
Although Kimble, Oppen and Dearborn concerned litigation instituted in federal court and no jurisdictional issue was squarely presented, the courts nevertheless determined that the claims of their respective plaintiffs were under admiralty or general maritime law. This determination as to which laws are applicable has jurisdictional effect.
Walker-Huthnance, in spite of Kimble, Oppen and Dearborn, places great emphasis on the fact that the alleged negligent act emanated from the platform, and as such, arose out of operations being conducted on the Outer Continental Shelf. The third party defendant is giving great weight to the locality from where the alleged wrongful act emanated. The Supreme Court in Executive Jet Aviation, Inc., v. City of Cleveland, Ohio, 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972), de-emphasized locality when considering whether a claim was cognizant in admiralty. That Court stated that a case would not be cognizable in admiralty unless the wrong has a significant relationship to traditional maritime activities. Thus, the focal point of inquiry is whether the wrong bears a significant relationship to traditional maritime activities, not where the wrong occurred.
Kelly v. J. C. Smith, 5th Cir. 1973, 485 F.2d 520, illustrates the kind of inquiry necessitated by Executive Jet. Plaintiffs, a father and his three sons, went deer hunting on an island located in the Mississippi River. The island was under the control of a hunting club that had a license for exclusive hunting rights there. As plaintiffs were leaving via their boat, hunting club members fired on them. The father and one of the sons were hit in the ensuing gun battle.
An issue on appeal was whether admiralty jurisdiction was present. The defendants argued that the harm emanated from land. The Fifth Circuit, at page 525, stated that from Executive Jet it discerned "factors to be considered in the circumstances. . .: the functions and roles of the parties; the types of vehicles and instrumentalities involved; the causation and the type of injury; and traditional concepts of the role of admiralty law." The court analyzed these considerations and held that there was admiralty jurisdiction.
Likewise this court finds that admiralty or general maritime laws are not inapplicable solely because the industrial waste, which allegedly caused Verrett's injuries emanated from the platform. The *299 rationale of Kimble, Oppen, Dearborn and Executive Jet support this conclusion.[6]
The court below relied on three cases in holding that the exclusive jurisdiction of Verrett's claim and the third party demands of Offshore Crews and Arthur Levy fell within the power of federal court: Gravois v. Travelers Indemnity Company, La.App., 173 So.2d 550 (1st Cir. 1965) [writ refused, 247 La. 1016, 175 So.2d 301], Rodrigue, supra, and Fluor Ocean Services, Inc. v. Rucker Company, 341 F.Supp. 757 (E.D.La.1972).
In Gravois, an oilfield worker, not a seaman, was killed while working on a sulphur mine installation located on the Outer Continental Shelf. Plaintiff, like Verrett, instituted suit in both federal district court and state district court. Defendants were third parties other than decedent's employer and their insurers. Plaintiff argued that the Lands Act, which incorporated the provisions of the Longshoremen's and Harbor Workers' Act (LHWA), was applicable; that the LHWA reserved a right to institute suit against any third party (other than the employer). From this reasoning plaintiff contended that the action against the third party could be based on either the Death on the High Seas Act or under Article 2315 of the LSA-Civil Code.
This court, in Gravois, determined that the Death on the High Seas Act was inapplicable as the death did not occur over navigable water; Gravois' claim was within the exclusive jurisdiction of federal court under the provisions of 43 U.S.C.A. § 1333. Gravois was not a case that determined the applicability vel non of the Lands Act. It involved an interpretation of whether the Lands Act made federal court the exclusive jurisdiction for a claim clearly based on the Lands Act, after the Lands Act was determined to be applicable.
In the instant case, we are not holding that a Lands Act claim can be brought in either state or federal court. Instead, we are holding that the Lands Act is inapplicable to the facts before us, that Offshore Crews' and Arthur Levy's right to indemnity is preserved under general maritime law[7] by the very language of the Lands Act, and that Offshore Crews and Arthur Levy under the Saving to Suitors Clause, may pursue their claim in state court.[8]
In Rodrigue two separate plaintiffs were involved. Dore, a platform worker was killed when a crane on which he was working collapsed and toppled over onto a barge he was unloading. Rodrigue, also a platform worker, was killed when he fell from a derrick rising above the platform and landed on the metal floor of the platform.
The Supreme Court reviewed the legislative history of the Lands Act and held that the Death on the High Seas Act did not apply to the two deaths of its own force under admiralty principles and that the Louisiana wrongful death statute applied as surrogate federal law; there was no applicable federal law inconsistent with our wrongful death statute.
*300 In the instant case, there is applicable federal law, establishing admiralty and general maritime jurisdiction, which exists wholly apart from the location of the platform. The rights of third party plaintiffs to indemnity exist in the maritime law, which applies of its own force. Thus, not only did Rodrigue involve different factual situations from the case at bar, the legal issues presented were also significantly different.
The lower court also relied on Fluor Ocean Services, Inc. v. Rucker Company, 341 F.Supp. 757 (U.S.D.C.E.D.La.1972). Plaintiff had agreed to furnish certain barges, equipment and personnel to defendant in raising a drilling platform that had been sunk as a result of damage by Hurricane Camille. The District Court on a motion to remand after removal to Federal Court found it had jurisdiction under the Outer Continental Shelf Lands Act, pointing to the relevant points that the platform had been used for drilling prior to its damage, that it would be similarly used subsequently and that the lease required that the structures, machinery, equipment, tools and material not required for production be removed from the premises. We believe that the connexity in the instant case to be more tenuous and find the cases of Kimble, Oppen, Rodrique and Dearborn, supra, more applicable.
Accordingly for the foregoing reasons, we reverse and remand, at the costs of the third-party defendant-appellee.
REVERSED AND REMANDED.
COVINGTON, Judge (dissenting):
I believe that the decision that state courts have jurisdiction concurrently with federal courts over matters of this nature is erroneous.
This litigation involves an action filed in the Sixteenth Judicial District Court for the Parish of St. Mary, State of Louisiana, by Hilton Verrett, Sr., the plaintiff, for injuries he allegedly sustained due to the negligence of the defendants in allowing spillage of industrial waste from an offshore platform to blow down onto the deck of the M/V PATHFINDER, rendering the deck slippery to such an extent that it caused the plaintiff, while working as captain aboard the vessel, to fall on the deck of the vessel. The accident sued upon arose out of operations conducted on the Outer Continental Shelf from a fixed and stationary platform located in the Gulf of Mexico for the purpose of exploring for oil and gas. Named as defendants[1] were Offshore Crews, Inc., the owner of the vessel and the plaintiff's employer; Walker-Huthnance Offshore Company, the owner of the offshore structure.
Offshore Crews, Inc., the plaintiff's employer, filed a third-party action against Walker-Huthnance only, demanding indemnity or contribution in the event of the plaintiff's recovery on the main demand. The defendants, Walker-Huthnance and Shell Oil, filed answers and later filed exceptions to the jurisdiction of the court over the subject matter of the action, on the grounds that the claims as to them were governed by the Outer Continental Shelf Lands Act, 43 U.S.C. § 1331, et seq., which vests exclusive jurisdiction of all controversies arising under the Lands Act in the United States District Courts.
The trial court rendered judgment sustaining the exception of lack of jurisdiction over the subject matter and dismissed both the plaintiff's action and the third-party action of Offshore Crews. I would affirm.
Offshore Crews appealed the judgment, contending that the alleged tort occurred on a vessel engaged in maritime commerce over navigable water, and therefore, the trial court erred in ruling that the Lands *301 Act was applicable; and also that the allegad tort was maritime in nature so as to be subject to the jurisdiction of the courts of this state under the Saving to Suitors Clause, 28 U.S.C. § 1333(1), which vests concurrent jurisdiction over maritime matters in the courts of the various states.
It is my opinion that the trial judge's reasons for judgment accurately state the facts, the issues and the applicable law, and I would adopt them as expressing the views of this Court, to-wit:
"At the time of the accident sued on, plaintiff was aboard the PATHFINDER, which was tied up to a stationary platform owned by Shell and located in Block 70, Southpass Area, Gulf of Mexico, in excess of 50 miles off the Coast of Louisiana, in the Outer Continental Shelf. Plaintiff alleges that oil drilling or related operations were being conducted on the platform by Shell and Walker-Huthnance and that exceptors permitted industrial waste to descend from the platform onto the deck of the PATHFINDER. The waste allegedly made the deck of the PATHFINDER slippery and caused plaintiff to fall on the deck of the vessel and sustain the injuries sued on. Offshore Crews filed a third party petition against Walker-Huthnance seeking indemnity from Walker-Huthnance in the event Walker-Huthnance's active negligence in conducting oilfield operations on the platform should cause technical or constructive liability to be visited on Offshore Crews.
"Exceptors' position that jurisdiction of the claims against them lies exclusively in the province of the Federal Court is premised on the following language contained in the Lands Act, 43 USC § 1333:
'(b) The United States district courts shall have original jurisdiction of cases and controversies arising out of or in connection with any operations conducted on the outer Continental Shelf for the purpose of exploring for, developing, removing or transporting by pipeline the natural resources, or involving rights to the natural resources of the subsoil and seabed of the outer Continental Shelf, and proceedings with respect to any such case or controversy may be instituted in the judicial district in which any defendant resides or may be found, or in the judicial district of the adjacent State nearest the place where the cause of action arose.'
"The resolution of these jurisdictional exceptions, in my view, requires that two questions be answered, to-wit:
1) Do the cause of actions asserted against exceptors `arise out of or in connection with any operations conducted on the Outer Continental Shelf for the purpose of exploring for, developing . . . the natural resources of the subsoil and seabed of the Outer Continental Shelf. . .'; and
2) If the answer to the first question is in the affirmative, does the exclusive jurisdiction for this class of lawsuit fall within the power of the Federal District Court to the exclusion of this court.
"Addressing ourselves to the second question, it is my view that the First Circuit decision of Gravois v. Travelers Indemnity Company, 173 So.2d 550 ([La. App.] 1st Cir. 1965) (writ refused [247 La. 1016], 175 So.2d 301), provides the answer.
"In Gravois, an oilfield worker was injured on a stationary platform on the Outer Continental Shelf. Suit was instituted in 17th Judicial District Court against an alleged tortfeasor also conducting operations on the platform. Exceptions to the jurisdiction were filed in the district court, which exceptions were overruled. The Court of Appeals reversed the trial court and held that the court was without jurisdiction because of the language of the Outer Continental Shelf Lands Act.
"The court stated at page 556:
'The clear intent of the act (Lands Act) was to vest all civil and political *302 jurisdiction in matters involving the offshore drilling activities on the Outer Continental Shelf in the exclusive federal court jurisdiction. Had Congress intended to grant concurrent jurisdiction to the state courts it would have so specified in this act as they did in the Jones Act. Failure to do so shows their intention to retain jurisdiction in the United States Courts.'
"Now passing to a consideration of the first question posed above, i.e., whether the causes of action asserted herein against exceptors fall within the scope of the Lands Act.
"The activity complained of as basis for the causes of action asserted by plaintiff and third party plaintiff against exceptors is with respect to operations being conducted on the stationary platform while in the process of exploring for or developing oil and gas. The court is urged, however, that there are two distinctions between the instant case and Gravois which demand a different result, to-wit:
1) The plaintiff in this case was a member of the crew of a vessel; and 2) the injury occurred on a vessel on navigable water rather than on a stationary platform.
"If plaintiff were asserting a claim against exceptors under the Jones Act, 46 USC 688, an additional question would be presented. The Jones Act, by incorporating portions of the FELA, provides concurrent jurisdiction in both state and federal court. Since the Jones Act is only applicable to the seaman's claim against his employer, the Jones Act does not play any part in these exceptions. In my view, the seaman status of the plaintiff, as it relates to these exceptors, presents no meaningful distinction between this case and Gravois.
"The second distinction urged upon us by counsel is likewise without merit. We fail to see why the result of Gravois should be changed just because this injury occurred on a vessel rather than on a stationary platform. The Lands Act certainly does not draw this distinction. Counsel urges that under the `savings to suitors' clause, (28 USC 1333) that plaintiff's option to bring this action in state court has been preserved. This argument was also made in the First Circuit in Gravois and that argument was rejected by the following language:
'In regard to the "savings to suitors" clause of the admiralty jurisdiction law, 28 USCA 1333, we believe this clause has no application to matters involved on the Outer Continental Shelf under the provisions of said Section 1333, 43 USCA, supra.'
"The savings to suitors clause is contained in an Act of Congress. The Lands Act is also an Act of Congress. If there is any conflict between the two Acts of Congress, the judiciary act, as modified, which contains the savings to suitors clause, is general in application and must yield to the specific Outer Continental Shelf Lands Act. There are at least two instances in which Congress has legislated exclusive jurisdiction to the federal courts for maritime causes of action: Suit to foreclose on a preferred ship mortgage, 46 USC 951; suit for wrongful death under Death on High Seas Act, 46 USC 761, Higa v. Transocean Airlines, 230 F.2d 780 (9th Cir. 1955).
"Additionally, the decision of the U. S. Supreme Court in Rodrigue v. Aetna Casualty & Surety Company, 395 U.S. 352, [89 S.Ct. 1835, 23 L.Ed.2d 360] (1969), indicates that this interpretation is correct. In that case, decedent Dore was operating a crane positioned on a stationary platform and was in the process of unloading a barge tied up alongside the platform. The crane failed and the crane toppled from the platform onto the barge. Dore was in the cab of the crane and sustained injuries which ultimately led to his death when the crane struck the barge below. The negligent act complained of occurred on the platform; the injury and ultimate death occurred on the barge. The Supreme Court, nevertheless, held that the Outer Continental Shelf Lands Act applied. Since the Rodrigue and Dore *303 cases originated in the federal judicial system, no jurisdictional question was presented. If those cases had been instituted in state court, however, it is apparent that this court would have had no jurisdiction.
"This leaves for consideration only the exception as it relates to the third party petition of Offshore Crews against Walker-Huthnance.
"As we interpret the pleading, Offshore Crews is claiming tort indemnity based upon wrongful act of Walker-Huthnance committed on the stationary platform. The court is of the opinion that this cause of action also falls within the scope of the Lands Act and for the reasons previously stated, feels that that exception is also well taken. In Flour [Fluor] Ocean Services, Inc., v. Rucker Company, 341 F.Supp. 757 (E.D.La.1972), a suit arising out of a contract to furnish barges, equipment and personnel for use in raising a drilling platform which had been used in oil and gas exploration on the Outer Continental Shelf was held within the scope of the Lands Act."
I agree with the trial court that the effect of the Lands Act is that the United States District Courts have exclusive original jurisdiction over all cases and controversies arising out of operations conducted on the Outer Continental Shelf for the purpose of exploring for natural resources. See Sartain, Offshore Oil Platforms and Admiralty Law: Rodrigue in Retrospect (Comment) 49 Tul.L.Rev. 658 (1975).
I also agree with the trial court that the seaman status of Verrett as it relates to these exceptors, who are not employers of Verrett, does not make this case different from the Gravois case. In any event Verrett, having fully settled all his claims, is no longer before the courts and can in no way be affected by the decision of this court. In my opinion, the judgment of the trial court should be affirmed.
NOTES
[1] 28 U.S.C.A. § 1333, the Saving to Suitors Clause presently applicable, contains virtually the same language and reads as follows:

"The district courts shall have original jurisdiction, exclusive of the courts of the States of:
"(1) Any civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are entitled."
[2] 46 U.S.C.A. §§ 761 et seq.
[3] 46 U.S.C.A. § 688.
[4] In 1970 the Supreme Court held that a remedy for wrongful death was provided by the general maritime law. Moragne v. States Marine Lines, Inc., 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970). Thus, since 1970 the main significance of the Jones Act is that it preserves a right to a jury trial.
[5] 46 U.S.C.A. § 740.
[6] See also, Gypsum Carrier, Inc. v. Union Camp Corporation, 489 F.2d 152, 5th Cir. (1974), for another example of proper application of the rationale of Executive Jet.
[7] See Tri-State Oil Tool Industries v. Delta Marine Drilling Company, 410 F.2d 178, (5th Cir. 1969) wherein an employer was sued under the Jones Act by a "seaman" who was injured while working on a submersible barge. The employer third-partied the party who was allegedly "active or primarily" negligent seeking indemnity. Judge Ainsworth found that maritime law provides for tort indemnity where there is no negligence or only passive negligence attributed to the indemnitee. Third party plaintiffs have alleged they were merely passively or vicariously at fault and that Walker-Huthnance was actively or primarily at fault.
[8] See Smith v. Service Contracting, Inc., La. App., 199 So.2d 36 (4th Cir. 1967), [writ refused, 250 La. 979, 200 So.2d 666 (1967), and judgment vacated 390 U.S. 143, 88 S.Ct. 841, 19 L.Ed.2d 970, for other reasons,] for an analysis of a seaman's remedy when injured on a fixed platform.
[1] Arthur Levy Boat Service, Inc. was also sued, but it was admittedly not a proper defendant since it did not own the vessel or employ the plaintiff or have anything to do with the offshore structure.