386 So.2d 1006 (1980)
Jerry M. POOL, Plaintiff-Appellant,
v.
KEMPER INSURANCE GROUP et al., Defendants-Appellees,
Travelers Insurance Company, Intervenor-Appellee-Appellant.
No. 7676.
Court of Appeal of Louisiana, Third Circuit.
May 21, 1980.
Writ Refused September 19, 1980.
*1007 Woodley, Barnett, Cox, Williams & Fenet, Robert W. Fenet, Lake Charles, and Jones & Jones, J. B. Jones, Jr., Cameron, for plaintiff-appellant-appellee.
Meredith T. Holt, Lake Charles, for intervenor-appellee-appellant.
Raggio, Cappel, Chozen & Berniard, Fred L. Cappel, Lake Charles, Randolph J. Waits, Francis Emmett, New Orleans, Voorhies & Labbe, John N. Chappuis, Lafayette, for appellee.
Brame, Bergstedt & Brame, Frank M. Brame, Stockwell, Sievert, Viccellio, Clements & Shaddock, Bernard H. McLaughlin, Lake Charles, for defendants-appellees.
Before DOMENGEAUX, GUIDRY and LABORDE, JJ.
DOMENGEAUX, Judge.
Plaintiff has appealed a judgment dismissing, for want of subject matter jurisdiction, his claim for personal injuries sustained in an offshore oil rig accident.
On July 14, 1977, plaintiff Jerry Pool was employed by General American Oil Company *1008 of Texas as a roustabout on an offshore oil platform located in the Gulf of Mexico eight miles south of Cameron, Louisiana. Plaintiff was operating a crane which was mounted on a pedestal attached to the frame of the fixed platform when the crane broke loose from its mounting on the rig and plunged into the Gulf. As a result of the 50-foot drop, plaintiff, who was still aboard the crane, suffered personal injuries for which he is now seeking recovery.
Before a year elapsed plaintiff filed suit in the 38th Judicial District Court for the State of Louisiana.[1] In this state court action plaintiff sued Link-Belt Corporation and FMC Corporation, the manufacturers of the crane, Road Equipment Company d/b/a RECO Crane Company, which maintains and repairs the crane, and the defendants' respective insurers. By supplemental and amending petition filed September 18, 1979, Trans-Ocean Contractors, Inc., as owner of the barge "Monitor" (which plaintiff was unloading at the time of the accident), and Garber Brothers, Inc., as owner/operator and/or charterer of the tugboat "Chuckie", were made defendants. Plaintiff has asserted claims under Louisiana Tort Law, General Maritime Law, the Outer Continental Shelf Lands Act (OCSLA), the Jones Act, and unseaworthiness.
Certain defendants excepted to the subject matter jurisdiction of the state court, alleging that the Outer Continental Shelf Lands Act has vested in the federal district courts exclusive original jurisdiction over actions stemming from controversies occurring on fixed offshore oil platforms located on the outer continental shelf. The 38th Judicial District Court sustained the exception and dismissed the case. Plaintiff has appealed.
Plaintiff's appeal essentially raises three issues:
(1) Plaintiff alleges he is a seaman pro hac vice and is thus entitled to sue in state court under the Jones Act (46 U.S.C.A. § 688) and the "saving to suitors" clause located in 28 U.S.C.A. § 1333.
(2) Plaintiff argues that even if the Outer Continental Shelf Lands Act applies he may sue in state court because OCSLA does not expressly vest exclusive original jurisdiction in the federal district courts.
(3) Plaintiff contends that the state court can hear his unseaworthiness claims against the vessels "Monitor" and "Chuckie" even with a finding of lack of subject matter jurisdiction over the in personam suits. Therefore, the trial court erred in dismissing plaintiff's state court suits against all defendants.
For reasons which follow, we reject all of plaintiff's contentions and affirm the trial court's dismissal for lack of subject matter jurisdiction.

SEAMAN PRO HAC VICE OR PLATFORM WORKER?
Plaintiff alleged in his supplemental petition that he was a borrowed servant and employee of Trans-Ocean Contractors, Inc. and/or Garber Brothers, Inc., and was assisting in the traditional seaman duties of loading and unloading a vessel. He further alleges he occupied the status of a Jones Act seaman pro hac vice in relation to these two defendants.
The Jones Act is a remedy reserved to seamen and expressly provides for concurrent state and federal court jurisdiction. Plaintiff's ability to sue under the Jones Act is therefore entirely dependent upon his status as a seaman. This matter is before us on an exception to subject matter jurisdiction so plaintiff's status has not been determined by the trier of fact.
Although the question of whether an injured employee was a Jones Act seaman at the time of his injury is normally a question to be decided by the trier of fact, that is not necessarily so in every case. Longmire v. Sea Drilling Corp., 610 F.2d 1342 (5th Cir. 1980). We conclude, based on factual stipulations and plaintiff's own allegations of fact as expressed in his petition, *1009 that plaintiff is not a Jones Act seaman and is therefore not entitled to sue under the Jones Act.
The United States Court of Appeal, Fifth Circuit, recently re-emphasized in Longmire v. Sea Drilling Corp., supra, that to qualify as a Jones Act seaman an injured worker must be able to show that he was permanently assigned to or performed a substantial part of his work on a vessel and that the capacity of his employment contributed to the function, mission, operation, or welfare of the vessel.
In our case, plaintiff maintains that he acquired the status of a seaman pro hac vice because he was, at the time of his injury, assisting in traditional seaman duties of loading and unloading a vessel,[2] even though he admitted he was a roustabout assigned to the fixed drilling rig. He has made no allegation that he was permanently assigned to the vessel or that his employment aided the vessel in any way. Under the Longmire rationale plaintiff would be adjudged a platform worker.
Black's Law Dictionary (Revised Fourth Edition 1968) defines the term "pro hac vice" as meaning "For this turn; for this one particular occasion." If plaintiff's new definition of "seaman" is introduced into the law, one seeking to be classified as a seaman would no longer be required to prove that he was permanently assigned to a vessel and that the capacity of his employment contributed in some way to the function, mission, operation, or welfare of the vessel. All he would need to prove is that he was injured while performing the work of a seaman or while temporarily assigned to a vessel. To attribute such a meaning to the term "seaman" would deprive it of its significance in admiralty law. We decline to attribute such a meaning to the word.[3] In so deciding we are merely following the lead of several recent federal decisions.
In Rodrigue v. Aetna Casualty & Surety Co., 395 U.S. 352, 89 S.Ct. 1835, 23 L.Ed.2d 360 (1969), the decedent Dore was operating a crane positioned on a stationary platform and was in the process of unloading a barge tied up alongside the platform. The crane failed and toppled from the platform onto the barge. The plaintiff was in the cab of the crane and sustained injuries which ultimately led to his death when the crane struck the barge below. The negligent act complained of occurred on the platform, although the injury and ultimate death occurred on the barge. The United States Supreme Court nevertheless held that OCSLA applied.
The factual situation which plaintiff Pool alleges is exactly similar to that which was presented to the United States Supreme Court in Rodrigue. For that reason OCSLA, and not the Jones Act, controls plaintiff's claim.
In the Fifth Circuit case of In Re Dearborn Marine Service, Inc., 499 F.2d 263 (5th Cir. 1974) a drilling tender was moored to a platform located on the outer continental shelf. An explosion occurred of the drilling platform, and a fireball enveloped the ship. Various crew members of the vessel, including the captain, were killed. In addition, a platform worker assigned to the platform, but who happened to be on the ship at the time of the explosion, was killed. The Fifth Circuit held that OCSLA controlled as to the platform worker's rights and remedies against the platform owner and operators, even though he was temporarily assigned to the vessel. The Court also recognized that the crew members of the vessel who were clearly traditional seamen maintained their traditional maritime remedies under the Jones Act, the Death on the High Seas Act and the General Maritime Law.
The factual posture of the Longmire case, supra, more than the factual situation here, favored a finding that the injured employee was a seaman rather than a platform worker. *1010 In that case, on the day he was injured, Longmire had spent his entire work shift storing anchor chains aboard a vessel. He was injured when he slipped as he tried to leave the room in which the anchor chains were stored. Longmire, a member of the drilling rig crew, argued that he was a seaman. The Fifth Circuit found that he lacked seaman's status because he did not show that he was permanently assigned to the vessel. Instead, the Court adjudged plaintiff Longmire to be a platform worker entitled to the remedies provided by OCSLA for workers on fixed platforms located on the outer continental shelf.
The clear import of the above cases is that a worker with Jerry Pool's factual history is a platform worker, not a seaman, and a mere allegation that plaintiff is a seaman will not entitle him to the benefits of a seaman when overwhelming circumstances indicate he is not.

OCSLA: EXCLUSIVITY OF FEDERAL COURT JURISDICTION
The trial court found that the Outer Continental Shelf Lands Act, 43 U.S.C.A. § 1333, et seq., applied and dismissed plaintiff's case because the court lacked subject matter jurisdiction. The court felt that OCSLA vested exclusive original jurisdiction over this dispute in federal district court.
Section 1333 of OCSLA reads in pertinent part as follows:
"(a) (1) The Constitution and laws and civil and political jurisdiction of the United States are extended to the subsoil and seabed of the outer Continental Shelf and to all artificial islands and fixed structures which may be erected thereon for the purpose of exploring for, developing, removing, and transporting resources therefrom, to the same extent as if the outer Continental Shelf were an area of exclusive Federal jurisdiction located within a State: Provided, however, That mineral leases on the outer Continental Shelf shall be maintained or issued only under the provisions of this subchapter.
. . . . .
All of such applicable laws shall be administered and enforced by the appropriate officers and courts of the United States." (Emphasis added).
The case of Gravois v. Travelers Indemnity Co., 173 So.2d 550 (La.App. 1st Cir.1965) specifically upheld the Outer Continental Shelf Lands Act and held that the purpose of the Act was to vest all civil and political jurisdiction in matters involving offshore drilling activities on the outer continental shelf in the federal courts and that such federal court jurisdiction was exclusive. In the Gravois case, the decedent was a platform worker working on a sulphur mine installation seven miles offshore and more than three miles from the shore of the State of Louisiana. The decedent was a regular employee of the sulphur company and a member of the platform crew working on the offshore platform complex. The Court held that the decedent was killed by working on the offshore platform, and since the offshore platform was within the limits of the outer continental shelf, the federal courts had exclusive jurisdiction. In addition, the Court held that the saving to suitors clause of admiralty jurisdiction law had no application to matters involving the outer continental shelf. The First Circuit stated:
"Had Congress intended to grant concurrent jurisdiction to the State Courts it would have so specified in this Act [OCSLA] as they did in the Jones Act. The failure to do so shows their intention to retain jurisdiction in the United States Courts." 173 So.2d at 556.
The reasoning and conclusion of the majority[4] in Gravois is eminently correct, and is wholly applicable here inasmuch as the factual situations are very similar. In the present case the plaintiff, Jerry Pool, was a platform worker and was actually working *1011 on a platform when the alleged accident occurred.
In Friedrich v. Whittaker Corp., 467 F.Supp. 1012 (S.D.Texas, 1979), the court held that the exclusive jurisdiction of an action for injuries sustained on a fixed offshore oilfield platform located on the outer continental shelf was in federal court and the state courts are entirely without jurisdiction of such cases. In that case, the plaintiff was a platform worker who was injured while working on a fixed offshore oilfield platform. The court cited with approval the Gravois decision.
The above two cases are the only ones found which specifically deal with the question of whether state courts have concurrent jurisdiction with federal courts over actions arising out of incidents on fixed rigs located on the outer continental shelf with resulting injuries to rig employees.[5] Both favored exclusive original jurisdiction in the federal courts in light of the apparent Congressional intent. We likewise adopt a broad interpretation of the jurisdictional grant and hold that the federal courts have exclusive original jurisdiction over cases similar to the one under review.
A careful reading of these two cases will indicate that OCSLA in no way purports to usurp admiralty or general maritime jurisdiction. The Act simply provides a body of law to protect offshore platform workers. Plaintiffs are not prevented from bringing any other causes of action which they might have in federal court along with their claims under OCSLA.
In Verrett v. Offshore Crews, Inc., 332 So.2d 292 (La.App. 1st Cir.1976), the plaintiff was a seaman who slipped and fell on a boat deck which had been made slippery by materials spilled from the offshore drilling platform onto the boat deck. The plaintiff was not a platform worker, and because he was a seaman, the saving to suitors clause (28 U.S.C.A. § 1333) was applicable to him. The Court observed:
"The very purpose of the Lands Act indicates it was not intended to oust other Federal laws applicable by their own force; it was enacted to fill a substantive and jurisdictional void in our law. The platform workers and their families needed a body of law to protect them. As shown above, seamen and their employers were adequately covered by an extensive body of law. To hold that admiralty and general maritime jurisdiction are ousted by the Lands Act would thwart a long development and evolution of a system of laws designed to govern the peculiar needs of seamen and their employers."
Thus, the Court recognized that admiralty and general maritime remedies co-exist with remedies available under OCSLA. In essence, the Court held that a seaman who is injured on a boat which was in waters covering the outer continental shelf could still pursue his admiralty and general maritime jurisdiction claims in state court.
The Verrett decision cites the case of Kimble v. Noble Drilling Corp., 416 F.2d 847 (5th Cir. 1969). The plaintiff Kimble was injured twice, each time while working on a drilling platform at sea. The Court held that Kimble's status as a seaman (which depended on his assignment to and responsibility on a drilling tender which was unquestionably a vessel) allowed him to pursue other admiralty and general maritime law remedies which applied of their own *1012 force. Again, the Court in Kimble recognized that OCSLA co-exists peacefully with other admiralty and general maritime remedies which may be independently available to the plaintiff. However, neither Verrett nor Kimble suggest that a platform worker injured aboard a fixed rig on the outer continental shelf may ignore the language of OCSLA and pursue his claim in state court. Certainly, he is free to join any other remedies to his OCSLA claim in his federal court suit.
Counsel for plaintiff cite the case of Smith v. Service Contracting, Inc., 199 So.2d 36 (La.App. 4th Cir.1967) as authority for filing the claim in state court. However, a careful reading of Smith will show that it is not applicable to the case before us. In Smith, the plaintiff was ordered to go onto the drilling platform to assist in unloading equipment from the vessel to the platform, and he sustained injuries during that unloading operation. There was no question that the plaintiff was a seaman, a member of the crew of a vessel and covered by the Jones Act. The plaintiff was not a platform worker assigned to a platform. The Court held:
"The Outer Continental Shelf Lands Act, 43 U.S.C.A. § 1333(c) (1), specifically excludes members of a crew of a vessel from coverage. Gravois, the case relied on by appellees, is not apposite here. For as the majority opinion carefully points out, the Jones Act was not there applicable. The person for whose death recovery was sought in that suit was not a seaman; he was a member of an installation crew working on a fixed structure in the Gulf of Mexico belonging to his employer, Freeport Sulphur Company. Here the Jones Act, which affords recovery for injury to seamen, and the `saving to suitors' clause of 28 U.S.C.A. § 1333(1), which provides for exclusive jurisdiction in the District Courts of the United States in civil cases of admiralty or maritime jurisdiction `* * * saving to suitors in all cases all other remedies to which they are otherwise entitled', are applicable. And, the plaintiff having elected to pursue his remedy in the Courts of the State of Louisiana, those courts do have jurisdiction. [Citations omitted]." 199 So.2d at 38-39.
The Smith decision did not question the validity of the Gravois decision, it simply distinguished the facts in Smith from the facts in Gravois. In the case before us we are not presented with the same type of factual situation found in Smith, because Jerry Pool was not a seaman. Instead, this case presents exactly the type of factual situation presented in Gravois. The Smith and Gravois decisions are therefore reconcilable, and we find the instant case governed by the Gravois rationale, as previously mentioned, and not by the Smith decision.
We surmise that plaintiff Pool's rationale for appealing the dismissal of his state court claim was that he felt he might not be entitled to a jury trial in federal court. We are not concerned with the merits of that issue. We will not allow plaintiff to circumvent the apparent intent of OCSLA by maintaining his suit in state court simply because he desires a state jury trial. Absent a more compelling reason to sustain state court jurisdiction, the dismissal of plaintiff's suit must be affirmed.

DISMISSAL AS TO ALL DEFENDANTS
The trial court's decision to dismiss the suit as to all defendants is also affirmed. Plaintiff has failed to supply this Court with any law or other persuasive authority (and this Court has found none) permitting plaintiff to split his action, with part being heard in federal court and part being heard in state court. Since the federal district court has exclusive original jurisdiction to hear cases arising under OCSLA, it follows that all other issues arising out of the same incident should also be heard in the federal court (See footnote 5). "This would permit," as plaintiff acknowledges in his brief at page 7, "all issues to be tried in the same court at the same time to the benefit of all parties and the court in the interest of judicial economy." We adopt as our own plaintiff's salutary pronouncement on the advisability of conducting all facets of the case in one forum.

*1013 DECREE
For the above and forgoing reasons the judgment of the District Court is affirmed. All costs are assessed against the plaintiff.
AFFIRMED.
NOTES
[1] On July 14, 1978, plaintiff filed a similar suit in the United States District Court for the Western District of Louisiana, Lake Charles Division.
[2] We express no opinion as to whether such activities are traditional seaman duties or whether they are actually the duties of other classes of employees.
[3] We note that plaintiff has provided this court with no authority to substantiate his claim that one in his situation can be classified as a seaman pro hac vice.
[4] The Court decided by a 3-1 vote that the state courts lacked jurisdiction because of exclusive federal jurisdiction.
[5] The case of Fluor Ocean Services, Inc. v. Rucker Co., 341 F.Supp. 757 (E.D.La.1972) is not on point. The case involved a contract to furnish certain barges, equipment, and personnel for use in raising a drilling platform which had sunk to the floor of the outer continental shelf. The issue confronting Judge Alvin Rubin was whether or not the federal court had jurisdiction, under OCSLA, to hear this action, which was only indirectly connected with operations conducted on the outer continental shelf for the purpose of developing natural resources. Judge Rubin found the federal court had original jurisdiction, at least by broadly interpreting the jurisdictional grant of 43 U.S. C.A. § 1333(b). He reached his conclusion after pointing out that the intent of Congress to make activities on the outer continental shelf subject exclusively to the control of the federal government is evidenced by the wording of various sections of OCSLA. However, nowhere in his opinion did he consider whether OCSLA granted concurrent jurisdiction or exclusive jurisdiction.