**FLUOR OCEAN SERVICES, INC.,
Plaintiff,**

v.

**The RUCKER COMPANY, Inc.,
Defendant.**

**Civ. A. No. 72–366.**

United States District Court,
E. D. Louisiana,
New Orleans Division.

March 28, 1972.

---

E. Harold Saer, Jr., New Orleans, La., for plaintiff.

Herschel L. Abbott, Jr., New Orleans, La., for defendant.

ALVIN B. RUBIN, District Judge:

On January 7, 1972, plaintiff filed suit in the Civil District Court for Orleans Parish. Pursuant to 28 U.S.C. § 1441(a), defendant Rucker filed a petition for removal to this court, alleging original jurisdiction under 43 U.S.C. § 1333(b). The plaintiff moves to remand, on the ground this court lacks jurisdiction.

The suit arises out of a contract between plaintiff and defendant in which plaintiff agreed to furnish certain barges, equipment, and personnel to defendant for use in raising a Shell Oil Co. drilling platform. The platform had sunk to the floor of the outer Continental Shelf as a result of damage by Hurricane Camille. Before then, the platform had been used in oil and gas exploration under a lease from the United States, acting through the Department of Interior, Bureau of Land Management, to the Shell Oil Co. Section 6 of the lease requires the lessee, Shell Oil Co., to remove from the premises all structures, machinery, equipment, tools, and materials not needed for producing wells upon the expiration of the lease.

According to the defendant's affidavits the Halliburton unit was salvaged from the ocean floor in usable condition and will again be used in oil and gas exploration. The same is true of the engine package that formed a part of the drilling platform. The remainder of the drilling platform was not salvaged in usable condition.

Jurisdiction of the United States district courts under the Outer Continental Shelf Lands Act is set forth in Section 1333(b) of Title 43 of the United States Code:

> The United States district courts shall have original jurisdiction of cases and controversies arising out of or

in connection with any operations conducted on the outer Continental Shelf for the purpose of exploring for, developing, removing or transporting by pipeline the natural resources, or involving rights to the natural resources of the subsoil and seabed of the outer Continental Shelf, and proceedings with respect to any such case or controversy may be instituted in the judicial district in which any defendant resides or may be found, or in the judicial district of the adjacent State nearest the place where the cause of action arose.

█ The issue presented by the motion to remand is whether this is a case "arising out of or in connection with any operations conducted on the outer Continental Shelf for the purpose of exploring for, developing, removing or transporting by pipeline the natural resources." The question appears to be one of first impression.

That the suit involves a controversy within the scope of Section 1333(b) is indicated by two factors: 1) The Halliburton unit and the engine package will again be used in oil and gas exploration, possibly on the outer Continental Shelf; and 2) The contract was undertaken in furtherance of the requirements of a lease, granted for the purpose of developing the natural resources of the outer Continental Shelf.

But should these factors be insufficient themselves to establish jurisdiction, there are other policy reasons for denying the motion to remand. As pointed out in defendant's excellent supplemental memorandum, the intent of Congress to make activities on the outer Continental Shelf subject exclusively to the control of the federal government is evidenced by the wording of various sections of the Act. Section 1332 provides, "[I]t is declared to be the policy of the United States that the subsoil and seabed of the outer Continental Shelf appertain to the United States and are subject to its jurisdiction, control, and power of disposition as provided in this

subchapter." Section 1333(a) (1) states, "The Constitution and laws and civil and political jurisdiction of the United States are extended to the subsoil and seabed of the outer Continental Shelf and to all artificial islands and fixed structures . . . to the same extent as if the outer Continental Shelf were an area of exclusive Federal jurisdiction located within a State . . ." Section 1333(a) (2) continues, in relevant part, "All of such applicable laws shall be administered and enforced by the appropriate officers and courts of the United States," and Section 1333(a) (3) cautions, "The provisions of this section for adoption of State law as the law of the United States shall never be interpreted as a basis for claiming any interest in or jurisdiction on behalf of any State for any purpose over the seabed and subsoil of the outer Continental Shelf, or the property and natural resources thereof or the revenues therefrom."

Congressional intent to establish exclusive Federal jurisdiction over the outer Continental Shelf is further shown by Title 43, Section 155 of the United States Code, wherein the term "public lands" is defined as the Federal Lands and Waters of the outer Continental Shelf. To the area of the outer Continental Shelf, Congress has extended the provision of the Longshoremen's and Harborworkers' Compensation Act, and the National Labor Relations Act. 43 U.S.C. § 1333(c) and (d). The Occupational Safety and Health Act, the Age Discrimination and Employment Act, the Labor-Management Reporting and Disclosure Procedure, the Welfare and Pension Plan Disclosure Act, and the Service Contract Act of 1965 are also applicable to the same area of the outer Continental Shelf. 29 U.S.C. §§ 653, 630, 402, 302; 41 U.S.C. § 357.

It is clear that the court had jurisdiction over the structure when it was being used for oil and gas exploration on the outer Continental Shelf. To hold that jurisdiction was lost when the structure sank would require a narrow

reading of the jurisdictional grant of 1333(b). However, a broad, not a narrow, reading of this grant is supported by the clear exertion of federal sovereignty exemplified by the legislation cited above.

In addition, in an area where the federal government has exerted exclusive sovereignty, such as the outer Continental Shelf, a single federal forum would be more appropriate than multiple state forums to decide disputes that arise there.

Thus, in controversies which may be only *indirectly* connected with operations on the outer Continental Shelf conducted for the purpose of developing natural resources, this court finds it has original jurisdiction.

For the reasons above, the motion to remand is denied.