Effie Roy STANSBURY, Personal Representative of the Estate of Larry R. Stansbury, Plaintiff-Appellant,

v.

SIKORSKI AIRCRAFT, Defendant,

Chevron USA, Defendant-Appellee.

No. 81–3270.

United States Court of Appeals, Fifth Circuit.

July 22, 1982.

Gary E. Theall, Abbeville, La., for plaintiff-appellant.

Lloyd C. Melancon, New Orleans, La., for defendant-appellee.

Before GEE, RUBIN and GARZA, Circuit Judges.

GEE, Circuit Judge:

Appellant Effie Roy Stansbury is the personal representative of the Estate of Larry R. Stansbury, her deceased husband. On July 18, 1980, the decedent was employed by Chevron as a chemical and process foreman. His office was in LaFayette, Louisiana, but his duties included traveling three to four times per week to drilling sites both offshore and on land to supervise and inspect painting projects. The offshore drilling rigs were "fixed" rigs. He was not permanently attached to any platform or land rig and normally returned home at the conclusion of each work day. On July 18, 1980, Stansbury inspected a paint job on a platform in the Gulf of Mexico. After he finished his duties, he boarded a Sikorski helicopter owned by Chevron. While flying over Eugene Island Block 296, Gulf of Mexico, the helicopter crashed into the sea, causing the death of Stansbury.

In September 1980, Mrs. Stansbury filed suit on behalf of herself as surviving spouse and her daughter under Death on the High Seas Act (DOHSA), the Jones Act, and general maritime law against Chevron and Sikorski Aircraft. Chevron filed a motion for summary judgment, alleging that Stansbury was not a Jones Act seaman and that, therefore, Longshoremen's and Harbor Workers' Compensation was the exclusive remedy under the Outer Continental Shelf Lands Act, 43 U.S.C.A. § 1331 et seq. (OCS-LA). The district court granted the motion and Mrs. Stansbury appealed, claiming that her husband was a Jones Act seaman and that she has a cause of action under DOH-SA and general maritime law. We hold that the Longshoremen's and Harbor Workers' Compensation is the exclusive remedy against Chevron and affirm the judgment of the district court.

The Outer Continental Shelf Lands Act incorporates the remedies of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. §§ 901 et seq. (LHWCA), for employees injured while involved in drilling operations in the Outer Continental Shelf (OCS):

(b) Longshoremen's and Harbor Workers' Compensation Act applicable; definitions. With respect to disability or death of an employee resulting from any injury occurring as a result of operations, conducted on the outer Continental Shelf for purpose of exploring for, developing, removing, or transporting by pipeline the natural resources, or involving rights to the natural resources, of the subsoil and seabed of the outer Continental Shelf compensation shall be payable under the provisions of the Longshoremen's and Harbor Workers' Compensation Act (33 U.S.C. §§ 901 et seq.). For the purposes of the extension of the provisions of the Longshoremen's and Harbor Workers' Compensation Act under this section—

(1) the term "employee" does not include a master or member of a crew of any vessel, or any officer or employee of the United States or any agency thereof or of any state or foreign government, or of any political subdivision thereof;

(2) the term "employer" means an employer any of whose employees are employed in such operation; and

(3) the term "United States" when used in a geographical sense includes the outer Continental Shelf, and artificial islands and fixed structures thereon. 43 U.S.C. § 1333(3)(b).

■ We have construed this section to apply to injuries occurring as a result of the operations described without regard to the physical situs of the injury. *Nations v. Morris*, 483 F.2d 577, 584 (5th Cir. 1973), *cert. denied*, 414 U.S. 1071, 94 S.Ct. 584, 38 L.Ed.2d 477 (1973). Because OCSLA provides its own status requirement—"employed in operations for purpose of exploring for, developing, removing, or transporting by pipeline the natural resources, or involving rights to natural resources, of the subsoil and seabed of the Outer Continental

Shelf"—Stansbury need not be engaged in "maritime employment" as is required under the LHWCA. Thus, there is no need for an employee to whom OCSLA applies to satisfy independently the two-fold situs and status test for LHWCA coverage. *Longmire v. Sea Drilling Corp.*, 610 F.2d 1342 (5th Cir. 1980). The OCSLA incorporated only the remedies, not the criteria, of the LHWCA. This includes 33 U.S.C. § 933(i), which provides that the workers' compensation is the exclusive remedy of an injured employee.

Stansbury meets the status criteria set out in OCSLA. Chevron is engaged in OCS extractive operations and thus meets the definition of employer. Stansbury was inspecting work done under his supervision on a fixed rig located on the OCS.[1] His work furthered the rig's operations and was in the regular course of the extractive operations on the OCS. But for those operations, he would not have been in the helicopter. His death, therefore, occurred "as a result of operations" as required by the OCSLA.

The only exemptions from OCSLA–LHWCA coverage are for government employees and Jones Act seamen. *See Higginbotham v. Mobil Oil Corp.*, 545 F.2d 422, 432 n.11 (5th Cir. 1977), *cert. denied*, 434 U.S. 830, 98 S.Ct. 110, 54 L.Ed.2d 89 (1977). Stansbury was not a government employee. At trial, Mrs. Stansbury argued that her husband was a Jones Act seaman. At oral argument, however, appellant's counsel conceded that there was no evidence that Stansbury had seaman status. The criteria to establish seaman status was set out in *Watkins v. Pentzien, Inc.*, 660 F.2d 604, 606

(5th Cir. 1981), *cert. denied*, —— U.S. ——, 102 S.Ct. 2010, 72 L.Ed.2d 467 (1982):

(1) He must have a more or less permanent connection with (2) a vessel in navigation and (3) the capacity in which he is employed or the duties which he performs must contribute to the function of the vessel, the accomplishment of its mission or its operation or welfare in terms of its maintenance during its movement or during anchorage for its future trips.

Whether a person is a seaman under these criteria is normally a question for the jury. *Id.* The issue may be resolved by summary judgment, however, where the undisputed material facts establish as a matter of law that an individual is not a Jones Act seaman. *Id.* Stansbury's inspection work was on land rigs and fixed drilling rigs in the OCS. A fixed platform in the OCS is not a vessel in navigation for purposes of the Jones Act. *Rodrigue v. Aetna Casualty & Surety Co.*, 395 U.S. 352, 355, 89 S.Ct. 1835, 1837, 23 L.Ed.2d 360 (1969); *Callahan v. Fluor Ocean Services, Inc.*, 482 F.2d 1350, 1351 (5th Cir. 1973). Therefore, summary judgment was properly granted. Because Longshoremen's and Harbor Workers' Compensation is the exclusive remedy under the Outer Continental Shelf Lands Act, Mrs. Stansbury may not bring an action under DOHSA or general maritime law.[2] The judgment of the district court is

AFFIRMED.

---

1. OCSLA does not exclude supervisory personnel from its definition of employee. Since the definition of employees did exclude government employees and Jones Act seamen, it follows that supervisory workers would also have been excluded in this section if Congress so intended. Further, this court has held that a construction site foreman was covered by the LHWCA. *Gilliam v. Wiley N. Jackson Co.*, 659 F.2d 54, 57–58 (5th Cir. 1981).

2. Nothing said in *Executive Jet Aviation, Inc. v. City of Cleveland*, 409 U.S. 249, 93 S.Ct. 493, 34

L.Ed.2d 454 (1972), or *Rodrigue, supra*, weakens our conclusion. OCSLA adopted Longshoremen's and Harbor Workers' Compensation to cover "maritime, non-maritime or ambiguous amphibious" claims for injuries to persons employed in natural resource operations on the OCS. *See Nations v. Morris*, 483 F.2d at 585. OCSLA has no situs requirement, and the status requirement relates to OCS extractive operations rather than to traditional maritime employment.