Thomas E. HOLCOMB, etc., and
Brenda Kay Holcomb

v.

ERA HELICOPTERS, INC., et al.

Russell BENTLEY

v.

ERA HELICOPTERS, INC., et al.

Suzanne SCHWENKE

v.

ERA HELICOPTERS, INC., et al.

Civ. A. Nos. 85–1314, 85–1371
and 85–1372.

United States District Court,
W.D. Louisiana,
Lake Charles Division.

Sept. 23, 1985.

Allen L. Smith, Jr., Plauche, Smith & Nieset, Lake Charles, La., for plaintiff Holcomb, et al.

John S. Bradford, Thomas G. Henning, Stockwell, Sievert, Viccellio Clements & Shaddock, Lake Charles, La., for plaintiff Bentley & Schwenke.

Dermot S. McGlinchey, William V. Dalferes, Jr. & Kenneth E. Laborde, McGlinchey, Stafford, Mintz, Cellini & Lang, New Orleans, La., for defendants.

### RULING ON PLAINTIFFS' MOTIONS TO REMAND

VERON, District Judge.

Plaintiffs, Thomas E. Holcomb, Russell Bentley and Suzanne Schwenke move to remand their respective civil actions to the 38th Louisiana Judicial District, contending that the defendants improperly removed said actions on the basis of diversity of citizenship and federal question jurisdiction. Because all three of these cases arise from the same helicopter crash and involve identical issues of law, the Court has consolidated them for the purpose of deciding whether they are to be remanded. For the reasons set forth below, this Court agrees with the plaintiffs and hereby remands their actions to the state court.

On November 12, 1984, all three plaintiffs were passengers aboard a B–206 Bell Helicopter which crashed into the Gulf of Mexico immediately after taking off from a movable drilling vessel, the Penrod No. 97, located in Gulf waters approximately three miles south of Grand Chenier, Louisiana. At the time of the crash, all three plaintiffs were employees of Schlumberger Offshore Services who had been engaged in serving the Penrod No. 97 and who were being returned to shore by the defendant ERA Helicopters, Inc. (hereinafter "ERA"), which is an air taxi flight service that owned the helicopter manufactured by defendant Bell Helicopter (hereinafter "Bell"), and which employed defendants Robert L. Lannerd (hereinafter "Lannerd") and Bill R. Richey (hereinafter "Richey"). The defendant Aetna Casualty & Surety Company, apparently improperly identified in the complaint as U.S. Aviation Underwriters, is the insurance carrier for ERA Helicopters. In April, 1985, the respective plaintiffs commenced the present actions by filing petitions in the 38th Louisiana State District Court which were subsequently removed to this Court by the defendants.

The two principal issues to be considered by this Court are whether federal jurisdiction is to be appropriately entertained either (1) on the basis of diversity of citizenship, 28 U.S.C. § 1332, or (2) pursuant to the Outer Continental Shelf Lands Act, 43 U.S.C. § 1331, et seq.

### I. DIVERSITY OF CITIZENSHIP

■ Although it is undisputed that defendants Lannerd and Richie are residents of Louisiana, as are plaintiffs, defendants nevertheless contend that because Lannerd and Richie are employees of ERA, their "legal identity" is hence the same as ERA,

a Washington State corporation. This Court finds defendants' argument to be utterly lacking in merit. It is certainly a well established rule that all plaintiffs must have diverse citizenship from all defendants in order for the Court to entertain jurisdiction under 28 U.S.C. § 1332. *Strawbridge v. Curtiss*, 3 Cranch (7 U.S.) 267, 2 L.Ed. 435 (1806). Defendants are unable to cite any authority to support their proposition that the requirement of complete diversity is met where the "legal identity," rather than the domicile, of all plaintiffs is diverse from the legal identity of all defendants. The tenement laid down by Chief Justice Marshall in *Strawbridge* has never been circumvented before by such considerations, and this Court finds defendants' attempt to apply by analogy those cases discussing legal identity and the res judicata effect of judgments to be wholly without merit. The Court therefore finds that the requirements for diversity jurisdiction have not been established.

## II. OUTER CONTINENTAL SHELF LANDS ACT

■ In the absence of diversity of citizenship, a claim arising under the Constitution, treaties or laws of the United States must be disclosed upon the face of the plaintiffs' complaints in order for removal jurisdiction to be properly invoked. 28 U.S.C. § 1441 (b); *Phillips Petroleum Co. v. Texaco, Inc.*, 415 U.S. 125, 94 S.Ct. 1002, 39 L.Ed.2d 209 (1974); *Powers v. South Central United Food & Commercial Workers Unions and Employers Health and Welfare Trust*, 719 F.2d 760 (5th Cir. 1983). The "arising under" provision of federal subject matter jurisdiction has re-

ceived thorough-going analysis by the courts,[1] and numerous decisions by the United States Supreme Court on this subject have clearly established the rule that in order for a claim to arise under the Constitution, laws, or treaties of the United States, "a right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action." *See, e.g., Gully v. First National Bank in Meridian*, 299 U.S. 109, 112, 57 S.Ct. 96, 97, 81 L.Ed. 70 (1936). Whether the case presents such a federal question "must be determined from what necessarily appears in the plaintiff's statement of his own claim in the bill or declaration...." *Taylor v. Anderson*, 234 U.S. 74, 75–76, 34 S.Ct. 724, 58 L.Ed. 1218 (1914). Thus, this Court is to determine the propriety of its removal jurisdiction solely by considering the matters presented by the plaintiffs in their complaints.[2] *Gully, supra,* 299 U.S. at 112–13, 57 S.Ct. at 97–98.

Defendants strongly urge this Court that the plaintiffs' state court petitions present claims arising under the Outer Continental Shelf Lands Act, 43 U.S.C. § 1333 et seq. In support of this contention, defendants argue that the jurisdictional grant of 43 U.S.C. § 1349(b)[3] should be construed broadly in favor of finding jurisdiction in any controversy having even an indirect connection with operations on the outer Continental Shelf. *See Fluor Ocean Services, Inc. v. Rucker Co.*, 341 F.Supp. 757, 760 (E.D.La.1972).

■ In considering whether the character of the allegations set forth in plaintiffs' complaints present a substantial federal

---

1. See *Powers v. South Central United Food & Commercial Workers Unions and Employers Health & Welfare Trust,* 719 F.2d 760, 763 n. 1 (5th Cir.1983).

2. The so-called "well-pleaded complaint rule" dictates that "a defendant may not remove a case to federal court unless the *plaintiff's* complaint establishes that the case 'arises under' federal law." *Franchise Tax Board of Calif. v. Construction Laborers Vacation Trust for Southern Calif.,* 463 U.S. 1, 103 S.Ct. 2841, 2847, 77 L.Ed.2d 420 (1983) (emphasis in original).

3. "... [T]he district courts of the United States shall have jurisdiction of cases in controversies arising out of, or in connection with (A) any operation conducted on the outer Continental Shelf which involves exploration, development, or production of the minerals, of the subsoil and seabed of the outer Continental Shelf, or which involves rights to such minerals, or (B) the cancellation, suspension, or termination of a lease or permit under this subchapter." 43 U.S.C. § 1349(b)(1).

question, the fact that plaintiffs may have failed to reference federal law is not determinative. This Court may appropriately consider *factual* allegations asserted in the complaints in determining whether they bring forth a claim or right arising under the Constitution, treaties or laws of the United States. *See, e.g., Commonwealth of Puerto Rico v. Sea-land Service, Inc.*, 349 F.Supp. 964, 968 (D.Puerto Rico 1970); Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 2d § 3722. An examination of the facts presented in the original state court petitions in the case at bar is therefore central to determining whether removal jurisdiction is appropriately vested in this Court pursuant to the Outer Continental Shelf Lands Act [OCSLA].

■ The complaint of each of the three respective plaintiffs sets forth that each plaintiff was employed by Schlumberger Offshore Services to service the Penrod No. 97, a movable drilling vessel, at the time of the crash. The complaints utterly fail to reveal any nexus whatsoever between the plaintiffs and a fixed drilling platform. Because the situs of plaintiffs' work at the time of the helicopter crash is of paramount importance in determining the rights and remedies available to them, this Court finds that the facts presented in the complaints give rise to causes of action which are essentially maritime in nature and which do not fall within the purview of the OCSLA. There is no case of which this Court has been made aware that holds the OCSLA governs the rights and liabilities of the parties where a fixed drilling platform has in no way been involved.[4] As noted by the United States Supreme Court, "[t]he purpose of the Lands Act [OCSLA] was to define a body of law applicable to the seabed, the subsoil, and the fixed structures ... on the outer Continental Shelf." *Rodrique v. Aetna Casualty & Surety Co.*, 395 U.S. 352, 355, 89 S.Ct. 1835, 1837, 23 L.Ed.2d 360 (1969). The inapplicability of the OCSLA to floating rig workers has been explained as follows:

> The OSCLA covers fixed platform workers, while floating rig workers, even those whose tasks are essentially identi-

---

**4.** The Fifth Circuit has recognized the jurisdiction of the OCSLA only in those cases involving operations closely connected with fixed platforms on the Outer Continental Shelf. In *Barger v. Petroleum Helicopters, Inc.*, 692 F.2d 337, 340 (5th Cir.1982), *cert. denied*, 461 U.S. 958, 103 S.Ct. 2430, 77 L.Ed.2d 1316 (1983) and *Stansbury v. Sikorski Aircraft*, 681 F.2d 948, 951 (5th Cir.1982), *cert. denied* 459 U.S. 1089, 103 S.Ct. 573, 74 L.Ed.2d 935 (1982), the Court addressed the applicability of section 1333(b) of OCSLA to employees killed in helicopter crashes on the high seas while flying to or from a fixed rig on the Outer Continental Shelf. Stansbury was a foreman for Chevron who travelled both to drilling sites on the land and to fixed platforms on the Continental Shelf in order to supervise and inspect painting work at those sites. In each case the Fifth Circuit Court found that the decedent's work had furthered the operation of a fixed drilling platform on the Outer Continental Shelf and was in the regular course of extractive operations on the Shelf. Neither death, the Court explained, would have occurred "but for" the extractive operations on the Shelf. *See also Herb's Welding v. Gray*, 766 F.2d 898, 900 (5th Cir.1985); *Longmire v. Sea Drilling Corp.*, 610 F.2d 1342, 1348 (5th Cir.1980); *In Re Dearborn Marine Service, Inc.*, 499 F.2d 263 (5th Cir.1974), *reh. denied* 512 F.2d 1061 (5th Cir. 1975), *cert. dismissed*, 423 U.S. 886, 96 S.Ct. 163,

46 L.Ed.2d 118; *Kimble v. Noble Drilling Corp.*, 416 F.2d 847 (5th Cir.1969), *cert. denied* 397 U.S. 918, 90 S.Ct. 924, 25 L.Ed.2d 99.

Defendants nevertheless contend that the decision of Judge Rubin, while sitting on the Federal District Court for the Eastern District of Louisiana in *Fluor Ocean Services, Inc. v. Rucker Co.*, 341 F.Supp. 757 (E.D.La.1972), supports their proposition that the OCSLA jurisdictional grant is to be interpreted broadly. *See id.* at 760. The *Fluor* case arose out of a contract in which the plaintiff had agreed to furnish certain barges, equipment and personnel to the defendant for the purpose of raising a fixed drilling platform that had sunk to the seabed floor. The case did not involve an injury to any worker assigned to a vessel, however, and in denying the plaintiff's motion to remand, Judge Rubin specifically observed that because the court had jurisdiction over the platform while it was engaged in drilling for oil and gas on the Outer Continental Shelf, he would not give the jurisdictional grant a "narrow" reading in order to find that jurisdiction was lost when the structure sank to the bottom of the ocean floor. *Id.* at 759–60. Defendants are unable to cite any authority explicitly recognizing that the rights and liabilities of the parties are to be determined pursuant to the OCSLA in any situation involving a worker assigned to a vessel that is unattached to a fixed drilling platform.

cal to the tasks performed by fixed platform workers, are treated differently. The reason for the different treatment of fixed and floating rig workers is that floating rigs are treated like *vessels* while fixed platforms are considered 'artificial islands.' *Longmire v. Sea Drilling Corp.*, 610 F.2d 1342, 1348 (5th Cir. 1980).

The significance of whether a plaintiff is assigned to a fixed platform or a vessel at the time of his injury is well-illustrated by the case of *Higginbotham v. Mobil Oil Corp.*, 357 F.Supp. 1164 (W.D.La.1973), supp. op. 360 F.Supp. 1140 (W.D.La.1973), which involved three workers who died when the helicopter in which they were passengers crashed into the Gulf of Mexico. At the time of the crash, the plaintiff-passengers Higginbotham and Shin were employed primarily as toolpushers on floating drilling rigs, while plaintiff Nation was a toolpusher for a fixed drilling platform. Because of the nature of their assignments, the Court held that Higginbotham and Shin were "seaman" within the terms of the Jones Act and their representatives were entitled to seek the available maritime remedies. *Id.* at 1174–76. The Court also found that because plaintiff Nation was *not* assigned to a movable rig at the time of the crash, he was not entitled to seaman's status and the OSCLA governed his remedies. *Id.* at 1176–79.[5]

Because it is undisputed that the three plaintiffs in the case at bar were all assigned to the movable drilling rig, the Penrod No. 97, and none of the plaintiffs' work "had furthered the operation of a fixed rig on the shelf,"[6] the Court finds that the three cases fail to present any substantial federal question arising under the OCSLA. Rather, the Court finds the cases to have a robust maritime flavor. As explained by the Fifth Circuit Court of Appeals:

> The crash of [a] helicopter, while it [is] being used in place of a vessel to ferry personnel and supplies to and from offshore drilling structures, bears the type of significant relationship to traditional maritime activity which is necessary to invoke admiralty jurisdiction. *LeDoux v. Petroleum Helicopters, Inc.*, 609 F.2d 824, 824 (5th Cir.1980). *See also Smith v. Pan Air Corp.*, 684 F.2d 1102, 1112 (5th Cir.1982).

Moreover, this maritime nexus exists even though the helicopter itself does not qualify as a vessel. *Barger v. Petroleum Helicopters, Inc.*, 692 F.2d 337 (5th Cir.1982).

■ Despite the Court's finding that the plaintiffs' complaints give rise to maritime causes of action, such claims do not "arise under" the Constitution, treaties or laws of the United States so as to be removable under 28 U.S.C. § 1441(b). *Superior Fish Co. v. Royal Globe Ins. Co.*, 521 F.Supp. 437 (E.D.Penn.1981); *Chambers-Liberty Counties Navigation District v. Parker Bros. & Co.*, 263 F.Supp. 602 (S.D.Tex. 1967); 1A MOORE'S FEDERAL PRACTICE ¶ 0.167 [3–1] at 463–64. This rule has been established on the basis of the saving to suitors clause of 28 U.S.C. § 1333,[7] which grants plaintiffs the option of bringing in personam maritime suits before the state court.[8] *See Romero v. International*

---

**5.** "We find that as a matter of fact that Nation was not assigned to a drilling barge, that he was attached to Mobil's stationary platform, that as a matter of law his seaman's status is determined by the situs of his work at the time of his injury and that he was not therefore a seaman on the date of his death." *Higginbotham, supra* at 1177; *see also Stansbury v. Sikorski Aircraft,* 681 F.2d 948 (5th Cir.1982) (Longshoremen Harbor Workers Compensation Act provided exclusive remedy pursuant to the OCSLA wherein the employee was killed in helicopter crash while returning from inspection of employer's fixed drilling platform on the Outer Continental Shelf).

**6.** *Herb's Welding,* note 4, *supra* at 900. *See* discussion at note 4, *supra.*

**7.** "The District Courts shall have original jurisdiction, exclusive of the courts of the States, of: (1) Any civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled." 28 U.S.C. § 1333.

**8.** Federal jurisdiction is exclusive, however, where the action is an *in rem* proceeding (e.g., a cause of action against the vessel itself). All other maritime matters are those which "the common law is competent to give" and can be

*Terminal Operating Co.*, 358 U.S. 354, 79 S.Ct. 468, 3 L.Ed.2d 368, *reh. denied* 359 U.S. 962, 79 S.Ct. 795, 3 L.Ed.2d 769 (1959). Because the plaintiffs in the instant cases elected to bring their maritime causes of actions [9] in the state court, this Court is bound to remand those causes in accordance with the saving to suitors clause of 28 U.S.C. § 1333, in the absence of any substantial independent federal question or diversity of citizenship. For the foregoing reasons, each of the above entitled actions is hereby REMANDED to the 38th Judicial District Court, Parish of Cameron, State of Louisiana, with the costs of removal to be borne by the defendants.

brought in state court, unless some other federal statute has vested exclusive jurisdiction in the federal court. *Madruga v. Superior Court of State of California*, 346 U.S. 556, 74 S.Ct. 298, 98 L.Ed. 290 (1954).

**9.** Despite the fact that the complaints of plaintiffs Bentley and Schwenke fail to mention or refer to the saving to suitors clause or the general maritime law, the Court takes notice that such law is necessarily brought into play by the factual allegations of the complaints. *See, e.g., Commonwealth of Puerto Rico v. Sea-land Service, Inc.*, 349 F.Supp. 964, 972 (D.Puerto Rico 1970); Wright Miller & Cooper, Federal Practice and Procedure: Jurisdiction 2d § 3722.