ZOILA–ORTEGO

v.

**B J–TITAN SERVICES COMPANY, et al.**

Civ. A. No. 90–3839.

United States District Court,
E.D. Louisiana.

Nov. 16, 1990.

Thomas Wilson Mull, Mull & Mull, Covington, La., for plaintiff.

Donald L. King, Jefferson Randolph Tillery, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, La., for defendants.

## ORDER AND REASONS

FELDMAN, District Judge.

This is not the first time this Court has heard from the parties involved in this litigation. On December 18, 1989, after extensive settlement discussions, the Court signed an Order of Dismissal and a Consent Judgment was entered settling the federal dispute between the same parties.

In March of 1987, plaintiff, Mrs. Zoila Ortego, filed a suit in federal court against B J–Titan seeking damages under the Jones Act, the general maritime law, and all applicable laws of the State of Louisiana relating to liability, including, but not limited to Louisiana Civil Code Article 2315.3. Other tactical moves have now also surfaced.

On November 21, 1988, plaintiff filed an identical suit in state court in the 34th Judicial District Court for the Parish of St. Bernard making the same claims for Jones Act negligence, unseaworthiness and punitive damages as those contained in her federal case. Neither the Court nor the named defendants were notified of the pending state litigation. Defendant B J–Titan was not made aware of the suit until served in September 1990.

Plaintiff is the mother of decedent, Joseph Arias. Mr. Arias worked for B J–Titan Services Company as an engineer working aboard the Barge BJ–54, when he was killed in an explosion on the barge. The barge was servicing a well located in Eloi Bay in St. Bernard Parish.

During discovery, plaintiff's counsel allegedly learned that the cause of the death of plaintiff's son was due to B J–Titan's attempts to avoid detection of the direct overboard discharge of hazardous toxic chemicals and their reckless and wanton disregard for the safety of their employees and of the public. Plaintiff, therefore, attempted to amend the original federal petition to include a claim for exemplary damages under La.Civil Code Article 2315.3.

Article 2315.3 was enacted in 1984 and provides: "In addition to general and special damages, exemplary damages may be awarded, if it is proved that plaintiff's injuries were caused by the defendant's wanton or reckless disregard for public safety in the storage, handling, or transportation of hazardous or toxic substances." Defendants opposed the motion, arguing that the general maritime law prevails over state law on issues involving punitive damages in marine negligence actions. The Court disallowed the amendment on July 14, 1988.

Beginning on July 18, 1988, this case and a companion case were tried before a jury. The jury returned a verdict for plaintiff on the Jones Act and unseaworthiness claims, but it was unable to reach a verdict on the issue of punitive damages and Judge Livaudais declared a mistrial (he later recused himself).

Ortego's case was thereafter reassigned to this Court, and after several settlement discussions the case was settled. Plaintiff promptly amended her state court petition to dismiss all causes of action which she claimed had been concluded in federal court.

After B J–Titan was served with the punitive damages suit in state court, it noticed removal to this Court on September 20, 1990. Plaintiff now seeks remand.

## I

■ The party opposing a motion to remand has the burden of proving that removal is proper and that the federal court has jurisdiction. *Greater New Orleans Stage, Motion Picture v. W.H. Bower Spangenberg, Inc.*, 587 F.Supp. 1307 (E.D. La.1984).

Under federal removal law, 28 U.S.C. § 1441, a defendant may remove to federal court any civil action brought in state court if the federal court would have had jurisdiction. Under § 1441(b) a federal district court has jurisdiction for removal purposes over any action founded on a claim or right arising under the Constitution, treaties or laws of the United States. In addition, if the federal court has jurisdiction based on diversity, 28 U.S.C. § 1332, the case may only be removed if none of the defendants, properly joined and served, is a citizen of the state in which the action is brought. Both jurisdictional anchors are disputed here.

## A.

■ A defendant may not remove a case to federal court unless the plaintiff's complaint establishes that the case "arises under federal law." *Eitmann v. New Orleans Public Service, Inc.*, 730 F.2d 359, 365 (5 Cir.1984), citing *Franchise Tax Bd.*

*v. Construction Laborers Vacation Trust*, 463 U.S. 1, 10, 103 S.Ct. 2841, 2847, 77 L.Ed.2d 420 (1983). Would this Court, then, have originally had federal question jurisdiction?

Plaintiff's First Supplemental and Amending Petition, filed in the Parish of St. Bernard on September 5, 1990, deletes all the causes of action except the claim for exemplary damages under La.C.C. Art. 2315.3. Plaintiff claims that B J–Titan's intentional overboard discharge of hazardous and toxic chemicals into Louisiana's inland waters was done with a reckless and wanton disregard for the safety of its employees, the citizens of St. Bernard parish, and the State of Louisiana. Therefore, plaintiff seeks punitive damages under Article 2315.3.

Although plaintiff's petition makes out no federal claim on its face, a federal court may have jurisdiction under discrete principles of general maritime law. The Judiciary Act of 1789 states that federal district courts have "original jurisdiction" over admiralty and maritime cases. 28 U.S.C. § 1333(1).

■ We follow a two pronged test for determining admiralty jurisdiction over torts: first, the wrong must occur in navigable waters, and, second, the wrong must bear a significant relationship to traditional maritime activity. *Executive Jet Aviation, Inc. v. Cleveland*, 409 U.S. 249, 268, 93 S.Ct. 493, 504, 34 L.Ed.2d 454 (1972). It is not disputed that the barge which allegedly discharged the hazardous and toxic chemicals was engaged in navigation and commerce upon navigable waters. And Joseph

Arias was employed by the defendant as an engineer working aboard the barge which allegedly exploded, causing his death.

■ A federal court, therefore, could have admiralty jurisdiction over plaintiff's tort claim. This does not, however, afford defendant an absolute right to remove the case based on our "arising under" jurisdiction. The Supreme Court instructs that maritime actions arising under the general maritime law are not claims that arise under the Constitution, treaties, or laws of the United States for purposes of invoking federal question jurisdiction. *Romero v. International Terminal Operating Company*, 358 U.S. 354, 375–376, 79 S.Ct. 468, 482, 3 L.Ed.2d 368 (1959).[1]

■ This rule, prohibiting the removal of maritime claims absent complete diversity of citizenship, finds its justification in the Savings to Suitors clause. 28 U.S.C. § 1333.[2] This clause gives plaintiff the option of bringing in personam maritime suits in state court. *Holcomb v. ERA Helicopters, Inc.*, 618 F.Supp. 339, 343 (W.D. La.1985), citing *Romero*, 79 S.Ct. at 468. To allow removal based simply on general maritime jurisdiction alone would defeat the plaintiff's choice of forum protected by the Savings clause.

Thus a defendant cannot remove a case based on general maritime or admiralty jurisdiction alone. Defendant must either find an independent basis for the Court's "arising under" jurisdiction, *Holcomb*, 618 F.Supp. at 344, or establish complete diversity. *Romero, supra.* Because defendant has not shown an independent basis for

---

**1.** Defendant contends that the state court action is simply an attempt to recover additional damages for personal injuries and could be viewed as an action attacking this Court's order of dismissal. Under such circumstances, removal would be appropriate under *Villarreal v. Brown Express, Inc.*, 529 F.2d 1219, 1221 (5 Cir.1976). However, the court in *Villarreal* noted plaintiff had made a fraudulent complaint evading removal by drafting the complaint so that the true purpose of the litigation was disguised and, thus, removal was appropriate. *Id.* In Ortego's case, however, plaintiff did consider the 2315.3 claim as an additional and distinct claim as is evidenced by plaintiff's attempt to amend her petition in July 1988. Plaintiff states that coun-

sel sought to include the claim because of new evidence discovered regarding defendant's handling of hazardous material which is directly addressed by Article 2315.3. Although the circumstances regarding the delayed disclosure of the state court suit are suspicious, the compelling features of *Villarreal* have not been established on this record.

**2.** "The district courts shall have original jurisdiction, exclusive of the courts of the States, of (1) any civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled." 28 U.S.C. § 1333.

federal question jurisdiction,[3] the only supportable basis for removal could be complete diversity.

### B.

■ Under § 1441(b), an action may only be removed on diversity grounds if none of the parties, properly joined and served as defendants, is a citizen of the state in which the action is brought.[4] Plaintiff has named as defendants Dave Darring, a district manager for B J–Titan, and R. Gray, the owner of the barge, both residents of Louisiana.

Defendant contends that if plaintiff has fraudulently joined these nondiverse defendants, as is urged to the Court, they cannot destroy diversity for removal purposes. Defendant maintains that the two Louisiana parties have been fraudulently joined because no possibility of recovery against them exists in law. If so, the nondiverse defendants are then not considered when determining whether complete diversity exists. *Carriere v. Sears Roebuck & Co.*, 893 F.2d 98 (5 Cir.1990), *cert. den.*, — U.S. ——, 111 S.Ct. 60, 112 L.Ed.2d 35 (1990).

■ The burden of proving that a plaintiff fraudulently joined nondiverse defendants is a heavy one, and rests with the removing party. *Green v. Amerada Hess Corp.*, 707 F.2d 201, 205 (5 Cir.1983), *cert. den.*, 464 U.S. 1039, 104 S.Ct. 701, 79 L.Ed.2d 166 (1984). In order for the removing party to succeed, a court must find that, based on the pleadings, there is abso-

lutely no possibility that plaintiff will be able to establish a cause of action against the nondiverse party, or that some outright fraud exists in the plaintiff's pleading of the jurisdictional facts. *McMorris v. Stafford*, 655 F.Supp. 671, 672 (M.D.La.1987), citing *Green*, 707 F.2d at 205. No showing or argument is made that plaintiff has engaged in some outright fraud in pleading jurisdictional facts.[5]

■ Plaintiff charges that Dave Darring was responsible for implementing the policies and procedures of the overboard discharge of hazardous and toxic substances. Plaintiff also maintains that R. Gray was responsible for keeping the barge in a gas free condition. Thus, plaintiff insists that one or both of these defendants could be liable under Article 2315.3. The question for removal is not whether either of these defendants is actually responsible, but whether Article 2315.3 arguably provides a remedy for the harm alleged. It does.

### C.

Defendant urges that the admiralty and maritime laws of the United States preclude application of Article 2315.3 to a maritime tort because federal maritime law applies to the issue of punitive damages. Here is the basis for such an argument:

> "Under Louisiana law, plaintiff has no cause of action for punitive damages except where authorized by statute. Since this is a maritime claim, however, our court must apply federal substantive law." *Edmonds v. Boh Bros. Const.*

3. Although defendant argues that plaintiff's claim may fall under the Jones Act, a Jones Act claim is not removable even if diversity of citizenship is present. 46 U.S.C.App. § 688 incorporating 28 U.S.C. § 1445(a).

4. The defendant points out that the two nondiverse defendants, Dave Darring and R. Gray, had not been served before the Notice of Removal was filed. They are, says B J–Titan, thus not "properly served" under § 1441(b). However, a suit is not removable merely because a nondiverse defendant, who has been named in the pleadings, has not been served. *Schwegmann Bros., Inc. v. Pharmacy Reports, Inc.*, 486 F.Supp. 606, 614 (E.D.La.1980).

5. This Court, however, feels compelled to note that plaintiff's conduct surrounding this litigation is open to doubt. Not once during the

lengthy litigation in federal court did the plaintiff alert either the Court or the defendant that plaintiff had suit filed in state court. This suit was not made known to defendant until September of 1990, when it was served. Plaintiff requested that service be postponed in the state suit when it was filed. This type of behavior is at best facially misleading, and reflects poor judgment on the part of the plaintiff's counsel. One can only wonder whether defendant would have settled the federal case if it was aware of an unidentified suit in state court for punitive damages involving the same incident. The papers in this record are not helpful on that issue. On remand, the state court will no doubt give close scrutiny to whether the parties' settlement included punitive damages.

*Co.*, 522 So.2d 1166, 1167 (La.App. 4 Cir. 1988).

Defendant contends, therefore, that maritime law provides a remedy for punitive damages for any wanton, willful and reckless acts of defendant and invokes *In re P & E Boat Rentals, Inc.*, 872 F.2d 642 (5 Cir.1989). Federal law, rather than state law, this Court is told, controls the damages issued because the cause of action arises under maritime law. *Protectus Alpha Nav. Co. v. N. Pacific Grain Grow.*, 767 F.2d 1379, 1385 (9 Cir.1985).

Historically, the federal judicial power extends to all cases of admiralty or maritime jurisdiction. The body of our general maritime law arises out of a commingling of Congressional statutes and the case literature. But the role of the states can not and has not been ignored in the development of the maritime law; indeed, the states have been an active partner in the "historic interacting federal-state relationship." *Romero*, 79 S.Ct. at 482. *Romero* recognized that:

> "Maritime law is not a monistic system. The State and Federal Governments jointly exert regulatory powers today as they have played joint roles in the development of maritime law throughout our history." *Id.*

 Our bifurcated federal system does not stop at our nation's shores. States retain broad police powers to regulate their own affairs. Although state laws must yield to the uniform system of maritime law, states are still given a "wide scope" to legislate. *Id.* 79 S.Ct. at 480. Although admiralty suits are traditionally governed by federal law, courts applying maritime law may adopt state law by express or implied reference or by virtue of the interstitial nature of federal law. *See Palestina v. Fernandez*, 701 F.2d 438, 439 (5 Cir.1983) (court applied Louisiana law to negligence suit involving collision of boat used by third party without authorization), citing *Baggett v. Richardson*, 473 F.2d 863, 864 (5 Cir.1973).[6]

## II

The issue in deciding whether to apply the Louisiana statute is whether federal law preempts state law on the issues covered by Article 2315.3, or, additionally, whether there is a fatal conflict between statutory schemes. *Askew*, 93 S.Ct. at 1598.

The Louisiana statute at issue is limited. Article 2315.3 provides for exemplary damages only if one acts with wanton or reckless disregard for public safety regarding the storage, handling, or transportation of hazardous or toxic substances. Defendant counters that maritime law generally provides for punitive damages. However, plaintiff contends that the punishment for a defendant's intentional disregard of public safety due to the handling of hazardous substances is within the police power of the state to regulate and is not specifically covered by federal law.

Louisiana enacted Article 2315.3 in 1984. There have been no decisions confronting the issue of whether the statute's regulation of hazardous substances is an area that falls within the "interstices" of the general maritime law when the facts implicate both constructs of government. But the Savings clause at the least requires that we acknowledge that the states retain a sphere of influence in these matters (absent diversity jurisdiction). And that notion drives this Court's decision.

Although defendant says that the nondiverse defendants were fraudulently joined, defendant has not met its heavy burden of

---

**6.** We have numerous examples in which courts have enforced state statutes or regulations in a maritime setting. Justice Frankfurter mentioned some in *Romero*, including state created liens, state remedies for wrongful death, state statutes for survival of actions, state rules for the partition and sale of ships, state laws governing specific performance of arbitration agreements, the effect of breach of warranty under contracts of maritime insurance, and more. *Askew v. American Waterways Operators, Inc.*, 411 U.S. 325, 338, 93 S.Ct. at 1590, 1598, 36 L.Ed.2d 280 (1973), citing *Romero*, 79 S.Ct. at 480–481. In addition, as plaintiff points out, states are given wide latitude in regulating maritime insurance, *Wilburn Boat Co. v. Fireman's Fund Insurance Co.*, 348 U.S. 310, 75 S.Ct. 368, 99 L.Ed. 337 (1955), and protecting shores from pollution. *Askew, supra.*

showing that there is no possibility that plaintiff would be able to establish a cause of action against either one or both of them.

Thus, defendant has not established that there is either diversity between the parties or independent federal subject matter jurisdiction to trump a remand.[7]

Plaintiff's Motion for Order Remanding to State Court Action Removed Under 28 U.S.C. Section 1446 is GRANTED and it is ORDERED that this case be remanded to the 34th Judicial District Court for the Parish of St. Bernard.

---

**7.** Because it is not before this Court, no opinion is expressed regarding the very substantial issue of the effect of the earlier settlement of the federal case while an unidentified state claim for Article 2315.3 damages had been filed but not served. This and all related issues must be resolved in the state court, but this Court must, again, underscore its genuine concern that it may have participated in settlement discussions without full information. Nevertheless, the issue has not been raised here.